LEWIS, VICE PRESIDING JUDGE:
 

 ¶1 Appellant, John Patrick Williamson, was tried by jury and convicted of first degree (malice) murder, in violation of 21 O.S.Supp.2012, § 701.7(A), in the District Court of McCurtain County, case number CF-2015-147, before the Honorable Gary L. Brock, Special Judge. The jury set punishment at life imprisonment without parole and Judge Brock pronounced judgment and sentence according to the verdict. Mr. Williamson now appeals to this Court.
 

 FACTS
 

 ¶2 Appellant shot and killed his step-brother, Michael Sean Daniel, in the middle of the road near Idabel, Oklahoma, in McCurtain County. Two witnesses, Kathy Minor and Gwen Devasier, saw Daniel on his knees in the road while Appellant shot him once in the chest. Daniel fell and Appellant shot him again in the face. Daniel had also been shot in the arm. Appellant walked to his pickup and drove away, leaving Daniel in the road. Daniel's motorcycle was parked just a few yards from where he was lying and the killing took place near Daniel's home.
 

 ¶3 Earlier, another witness saw the victim's motorcycle and Appellant's pickup traveling east on the road at a high rate of speed with the pickup just about fifty yards behind the motorcycle. Investigators found spots that appeared to be blood on the left side of the motorcycle.
 

 ¶4 The medical examiner found three wounds to the victim; a wound to his left arm went through his arm and into the left side of his chest. There was one to the right side of his chest, and one to the right side of the victim's face. The victim had a blood alcohol content of .14 percent. He also had levels of the anti-depressants Sertraline and Trazodone in his system.
 

 ¶5 This shooting was the culmination of a feud between Appellant and his step-mother's family, including his step-brother Michael Daniel, which began soon after his father died. His step mother, Anita Williamson, testified that when her estranged husband, John Henry Williamson, died, Appellant moved into his house. Mrs. Williamson was, however, a joint owner and she started proceedings to have him removed from the house.
 

 ¶6 One day, about seven months prior to this shooting, Mrs. Williamson went with the victim, who was her son, to visit a couple of friends and talk about getting Appellant out of the house. They sat around drinking beer and decided they should get Appellant out of the house before he had a chance to cause damage. They went to the house and Daniel and one friend went to the door. Appellant met them at the door carrying a cane. Appellant
 struck both men with the cane and they went to the ground. Mrs. Williamson went to the door carrying a baseball bat. She told her step-son that the house was hers and she wanted him out. Appellant gathered his children and drove away. Mrs. Williamson stayed there that night and apparently moved in.
 

 ¶7 Another time, about five weeks prior to the shooting, Mrs. Williamson and Daniel drove by Appellant and he started hollering, yelling and cursing them out. They just drove on by. Later that day, however, Daniel received threatening text messages from Appellant in an attempt to get Daniel to fight him.
 

 ¶8 The night before the shooting Appellant stayed at the home of Jeffrey and Gayla Alford. On the morning of May 6, Appellant drove to Wal-mart in Idabel, where he was caught on video, and drove back to the Alford home. Around 2:30 p.m. Appellant received a call and went outside to answer the call. He came back in and told Gayla Alford that he would be spending the night in Broken Bow. Witnesses remembered seeing the shooting occur at about 3:40 p.m.
 

 ¶9 After Appellant drove away from the scene of the shooting he drove to Cheryl Tutt's house arriving there about 4:00 p.m. Tutt is Gayla Alford's sister. Tutt testified that she invited Appellant in and he looked scared. He was shaking and sweating. His color was pale. He told her, "I done it and somebody saw my truck." Appellant was wearing the same Carhartt shirt that Wal-mart video showed he was wearing before the shooting. Appellant asked Tutt to drive him to Texarkana, but she could not because she did not have her car. Appellant asked for back-road directions to Gayla's house. He asked Tutt to not say anything to anybody. After Appellant left, Tutt called Gayla and told her Appellant was on his way and something was not right.
 

 ¶10 Appellant arrived at the Alford home, but he was no longer wearing the blue Carhartt shirt. Appellant asked Gayla to take him to Texarkana, but she could not. He asked her for money, told her he loved her, and asked her to take his dog. He wanted her to not think he was a bad person, but he had to go.
 

 ¶11 Investigators found the blue Carhartt shirt near where Appellant had parked at the Tutt house. They also found a box of .22 caliber shells nearby. Appellant's pickup was located in Hope, Arkansas the next morning and Appellant was eventually arrested nearby at around 8:00 a.m.
 

 ANALYSIS
 

 ¶12 Appellant claims in proposition one that his trial was fundamentally unfair because the admission of prejudicial and otherwise improper law enforcement testimony invaded the province of the jury. Appellant concedes that most of the testimony came without objection, so this Court reviews those instances for plain error only.
 

 ¶13 To be entitled to relief for plain error, an appellant must show: "(1) the existence of an actual error (i.e., deviation from a legal rule); (2) that the error is plain or obvious; and (3) that the error affected his substantial rights, meaning the error affected the outcome of the proceeding."
 
 Hogan v. State
 
 ,
 
 2006 OK CR 19
 
 , ¶ 38,
 
 139 P.3d 907
 
 , 923 ;
 
 see
 

 Simpson v. State
 
 ,
 
 1994 OK CR 40
 
 , ¶¶ 3, 11, 23,
 
 876 P.2d 690
 
 , 694, 695, 698. This Court will only correct plain error if the error seriously affects the fairness, integrity or public reputation of the judicial proceedings or otherwise represents a miscarriage of justice.
 
 Hogan
 
 ,
 
 2006 OK CR 19
 
 , ¶ 38,
 
 139 P.3d at 923
 
 .
 

 ¶14 Appellant complains about OSBI Agent Whit Kent's testimony. His testimony, Appellant contends, was a rehash of other witnesses' testimony using a timeline to summarize the State's theory of the case. Appellant also complains that Agent Kent was allowed to testify regarding the contents of recordings of Appellant's jail conversations before the recordings were introduced to the jury.
 

 ¶15 Agent Kent testified about a timeline prepared by him and introduced as an exhibit with no objection by Appellant. His testimony about the timeline was a summary of the investigation and what information he gathered to form the basis for the
 timeline. His testimony did not give an opinion regarding the veracity of the witnesses' testimony. As such, his testimony did not amount to improper bolstering or vouching.
 
 See
 

 Warner v. State
 
 ,
 
 2006 OK CR 40
 
 , ¶ 24,
 
 144 P.3d 838
 
 , 860-61,
 
 overruled on other grounds
 

 Taylor v. State,
 

 2018 OK CR 6
 
 ,
 
 767 P.3d 265
 
 (where there is no expression of personal belief in witnesses' credibility or that evidence not presented supports witnesses' testimony there is no improper vouching). Contrary to Appellant's argument, Kent's testimony did not force the jury to ignore its responsibility to make its own conclusions based on the facts and circumstances appearing in evidence. This testimony, therefore, was not improper as it did not tell the jury what conclusions to reach.
 
 Romano v. State
 
 ,
 
 1995 OK CR 74
 
 , ¶ 21,
 
 909 P.2d 92
 
 , 109.
 

 ¶16 Kent's testimony may have reiterated some of the witnesses' testimony; however, the reiteration was not so cumulative that its probative value was substantially outweighed in violation of 12 O.S.2011, § 2402. The testimony was probative to show the steps in the investigation, why the focus was on Appellant, and how law enforcement conducted their investigation leading to Appellant's apprehension.
 

 ¶17 Kent's testimony about the recordings of Appellant's jail conversations also garnered no objection by defense counsel, thus we review for plain error only. Appellant complains that, in setting a foundation for the introduction of the recordings, Kent testified about incriminating phrases on the recordings just before the trial court admitted the tapes. Appellant's only complaint is that the testimony bolstered the recordings, was cumulative of the recordings, and usurped the jury's ability to decide what was on the recordings.
 

 ¶18 Here, the jury was not asked to abandon its own perception of the recordings and substitute its interpretation for that of Kent. Kent only testified about the phrases he thought were important in the investigation and which statements were incriminating based on his training and experience. The jurors were free to determine the weight of these recordings on their own. There was no error in Kent's testimony.
 

 ¶19 Finding no error in the admission of Kent's testimony, this Court cannot find plain error. Proposition one is denied.
 

 ¶20 In proposition two, Appellant argues that the admission of State's Exhibits 9, 21, and 42-55 was error because the exhibits were more prejudicial than probative and were unnecessarily cumulative. Appellant failed to object at trial, therefore, we review only for plain error.
 
 Simpson
 
 ,
 
 1994 OK CR 40
 
 , ¶ 2,
 
 876 P.2d at 692-93
 
 . To obtain relief, Appellant must prove a plain or obvious error affected the outcome of the proceeding.
 
 Hogan,
 

 2006 OK CR 19
 
 , ¶ 38,
 
 139 P.3d at 923
 
 .
 

 ¶21 Appellant first claims that it was error to admit the timeline prepared by Agent Kent (Exhibit 9), because it was only a demonstrative aid. Again, Appellant made no objection at trial, thus we review for plain error only.
 
 See
 
 12 O.S.2011, § 2104. Appellant cites
 
 Mitchell v. State
 
 ,
 
 2006 OK CR 20
 
 , ¶ 59,
 
 136 P.3d 671
 
 , 698, where this Court held that plain error occurred when a demonstrative timeline was admitted as evidence.
 

 ¶22 The timeline in
 
 Mitchell
 
 was a "best guess" timeline prepared by a crime scene reconstruction expert in order to aid the jury in understanding his expert testimony. Furthermore in
 
 Mitchell
 
 the State admittedly characterized the timeline as a demonstrative aid during trial. The timeline in this case, however, was based on the factual testimony of several witnesses who testified about times and places relevant to the crime.
 

 ¶23 In
 
 Mitchell
 
 , the introduction of the timeline did not serve as the sole purpose for the reversal and remand for a new sentencing, thus this Court is free to determine whether the introduction of the timeline in this case affected Appellant's substantial rights. Here, the timeline accurately reflected the witnesses' testimony and was not based on any speculation. Thus, no clear error is shown. Moreover, the introduction of the summation of witnesses' testimony as represented by the timeline did not adversely affect Appellant's rights.
 

 ¶24 Appellant next complains about the introduction of the victim's blood soaked
 shirt (Exhibit 21). He claims the shirt was not relevant to any issue in the case and served only "to inflame the jury and prejudice the defendant."
 
 Citing
 

 Brewer v. State
 
 ,
 
 1966 OK CR 58
 
 , ¶ 21,
 
 414 P.2d 559
 
 , 564 ;
 
 see
 
 12 O.S.2011, §§ 2402 - 2403.
 

 ¶25 In
 
 Brewer
 
 , the appellant objected to the introduction of the bloody clothing. Here there was no objection. Not only did Appellant fail to object, he stipulated to the admission of the shirt. As stated, we will review for plain error only. This shirt is the only piece of evidence showing the amount of blood at the scene of the crime. This shirt represents the best evidence of the color of the shirt, which corroborates the witnesses' description of the shirt worn by the victim. Furthermore, Appellant has not shown that the introduction of this bloody shirt prejudiced him in any way.
 

 ¶26 Appellant next complains about the introduction of fourteen different photographs of bullets and bullet fragments which were removed from the victim's body. (Exhibits 42-55) No objection to the introduction of these photographs was made at trial. Appellant's argument is that the numerous photographs "likely confused the jury and made them believe many more than three bullets had been fired...." Again, Appellant cannot show that he suffered any prejudice from the introduction of these photographs.
 

 ¶27 All of the evidence complained of in this proposition was probative and relevant for the jury to understand the criminal elements, the overall context of the crime, Appellant's method of committing the crime, his actions after the crime was committed, and the identity of the victim. Appellant cannot show that the introduction of this evidence was substantially outweighed by any of the dangers outlined in 21 O.S.2011, § 2403. This Court, finding no error in the introduction of this evidence, therefore, cannot conclude that the introduction of this evidence rises to the level of plain error. Proposition two is denied.
 

 ¶28 Appellant complains, in proposition three, about the giving of the instructions by the trial court. He first complains that the trial court's reading of the instructions to the jury was confusing and misleading.
 

 ¶29 He points out, first, that the trial court took out an instruction during the reading of the instructions. The trial court had just read the elements of first degree murder for the second time and began to read the elements of manslaughter. The trial court commented that instruction 26 was a repeat of the elements of heat of passion manslaughter so he was removing it. There was no objection from Appellant.
 

 ¶30 Appellant next points out that the trial court's comment during the reading of the instructions that he is "reading ahead of myself" was confusing. There is nothing at all confusing in the record here. Appellant next notes that the trial court took out instruction 35 because it was a repeat of the eighty-five percent instruction. Again there was no objection.
 

 ¶31 A reading of the transcript does not reveal confusing or misleading instructions. There is no error evident on the record. The initial hurdles for plain error cannot be met here.
 

 ¶32 Appellant argues error occurred because the trial court failed to define malice aforethought during the initial instructions to the jury, but gave the instructions after the State had presented the first closing argument. The trial court obviously corrected its own error and there was no objection by Appellant. He cannot show that he was harmed in any manner. There is no plain error here.
 

 ¶33 Appellant argues that it was error for the trial court to fail to define re-establishment, in the context of self-defense, in the instructions. See OUJI CR 2d, 8-51. Appellant failed to request this instruction, so, again, we review for plain error only. The trial court indicated that it had a duty to instruct on manslaughter in the first degree and self-defense if there was any evidence, however slight, to support the instruction. The court, therefore, gave instructions on manslaughter and self-defense.
 

 ¶34 Re-establishment is relevant where a defendant, who was the original aggressor, regained the right of self-defense when the defendant withdrew or attempted
 to withdraw from the altercation and communicated his desire to withdraw. When the victim continued the altercation he becomes the aggressor and a defendant has the right of self-defense.
 

 ¶35 In this proposition, Appellant does not identify specific facts which would have entitled him to instructions on re-establishment. There is no evidence that Daniels was the aggressor or that Appellant attempted to withdraw from a confrontation. Appellant only theorizes that if the trial court instructed on self-defense, he must have been entitled to this instruction as well. This belief is an inappropriate measure of the law. The correct standard is that the instructions are warranted when self-defense has been properly raised.
 
 Perez v. State
 
 ,
 
 1990 OK CR 67
 
 ¶ 9,
 
 798 P.2d 639
 
 , 641. The evidence presented during trial must make out a
 
 prima facie
 
 case of self-defense in order to receive the benefit of the instructions. Appellant cites jail recordings and a Facebook post. The jail recordings are found in State's Exhibit 34A and the Facebook post is part of State's Exhibit 10. None of these exhibits make out a
 
 prima facie
 
 case of self-defense. There must be a prima facie case of self-defense.
 
 Ball v. State
 
 ,
 
 2007 OK CR 42
 
 , ¶ 29,
 
 173 P.3d 81
 
 , 89. "
 
 Prima facie
 
 evidence is evidence that is 'good and sufficient on its face,' i.e., 'sufficient to establish a given fact, or the group or chain of facts constituting the defendant's claim or defense, and which if not rebutted or contradicted, will remain sufficient to sustain a judgment in favor of the issue which it supports.' "
 
 Cuesta-Rodriguez v. State
 
 ,
 
 2011 OK CR 4
 
 , ¶ 7,
 
 247 P.3d 1192
 
 .
 

 ¶36 The jail recordings record Appellant claiming that he never owned a gun and that he didn't go there looking for trouble. He just wanted to "whoop his ass." He also claims on the recordings that he didn't know "how it came in my hands." He says that he must have taken it from Sean. His Facebook post shows that he moved his boys back to Florida; he asserts that it's "open season"; and he's not sure he will make it back. No reading of this evidence provides a
 
 prima facie
 
 case of self-defense on the day of the killing. There was positively no evidence that Daniel was the aggressor at any time on the day of his death.
 

 ¶37 Here, the trial court was overly generous in giving instructions on self-defense. Any instruction on self-defense went to the benefit of Appellant.
 
 See
 

 Willingham v. State
 
 ,
 
 1997 OK CR 62
 
 , ¶ 31,
 
 947 P.2d 1074
 
 , 1082,
 
 overruled on other grounds
 

 Shrum v.
 
 State,
 
 1999 OK CR 41
 
 ,
 
 991 P.2d 1032
 
 . The jury was not presented with any
 
 prima facie
 
 evidence of self-defense, thus he was not entitled to instructions on self-defense. Appellant, therefore, cannot show that the failure to define re-establishment related to the self-defense instructions prejudiced him in any way.
 

 ¶38 Appellant, in proposition four, contends the trial court erred in allowing the State to reopen its case to present evidence of Appellant's attempted escape. Defense counsel objected and moved for a mistrial.
 

 ¶39 The reason for the trial court allowing the State to reopen its case to present more evidence was clear in the record. Appellant broke free from custody and ran out the backdoor of the courthouse. A deputy was in pursuit and was yelling for help. Appellant was ultimately apprehended after running about seventy-five yards. This incident occurred after the State had completed its case and had rested, but before the defense made any announcement regarding their case.
 

 ¶40 Title 22 O.S.2011, § 831 permits the introduction of additional evidence by the State on its original case "for good reason, in furtherance of justice, or to correct an evident oversight" as found by the trial court. We review the trial court's decision for an abuse of discretion. An abuse of discretion is "a clearly erroneous conclusion and judgment, one that is clearly against the logic and effect of the facts presented."
 
 Neloms v. State
 
 ,
 
 2012 OK CR 7
 
 , ¶ 35,
 
 274 P.3d 161
 
 , 170 (quoting
 
 Stouffer v. State
 
 ,
 
 2006 OK CR 46
 
 , ¶ 60,
 
 147 P.3d 245
 
 , 263 ).
 

 ¶41 Appellant claims that evidence of his running from the custody of peace officers was irrelevant as it did not constitute "flight" as outlined in OUJI-CR 2d 9-8. He claims, therefore, the trial court abused its discretion
 in allowing the State to reopen its case to present evidence.
 

 ¶42 This Court has identified evidence of a consciousness of guilt which may be shown by other circumstances not related to flight envisioned in the uniform flight instruction. In
 
 Dodd v. State
 
 ,
 
 2004 OK CR 31
 
 ,
 
 100 P.3d 1017
 
 , this Court held that a defendant's attempted suicide while in custody about one month after his arrest constituted relevant evidence of an admission by conduct.
 
 Id.
 
 ¶¶ 31-33,
 
 100 P.3d at 1030-31
 
 . In so holding, this Court identified several actions which might constitute consciousness of guilt evidence. This evidence includes attempts to intimidate, threaten or bribe witnesses; attempting to alter or destroy evidence; attempts to escape confinement, failure to honor bail agreements, or alter physical appearance.
 
 Id.
 
 ¶ 34,
 
 100 P.3d at 1031
 
 (and citations therein). Any attempt by a defendant to influence the proceedings against him may be relevant to show a consciousness of guilt.
 

 Id.
 

 ¶43 Here, Appellant's attempt to escape custody during trial is relevant to show a consciousness of guilt. The fact that such evidence is open to interpretation does not render it inadmissible.
 
 Id.
 
 ¶ 36,
 
 100 P.3d at 1031
 
 . Here, Appellant might have believed that he was facing an inevitable fate and was helpless to prevent a believed miscarriage of justice. This belief, however, is one of the interpretations best left for the jury to consider. The trial court, therefore, did not abuse its discretion in permitting the State to reopen its case to introduce evidence of Appellant's attempt to escape custody. His argument regarding this evidence must fail.
 

 ¶44 Appellant argues in proposition five that the flight instruction given to the jury was improper because he (Appellant) offered no evidence explaining his acts. Appellant did not object to the instructions given, thus we review for plain error. We, therefore, must initially decide if the giving of the instruction constituted error at the outset.
 

 ¶45 Here, Appellant claims that the instruction was improper based on his departure to Arkansas after the killing and his attempted escape from the courthouse. Appellant is mistaken.
 

 We have held that flight instructions are improper if they (1) presume, as a matter of law, that unexplained departure from the crime scene demonstrates consciousness of guilt; or (2) assume that the person leaving the scene was the defendant, when that fact is in dispute. In either case, the court has invaded the province of the jury to determine the facts, and the conclusions to be drawn from them.
 

 Dodd
 
 ,
 
 2004 OK CR 31
 
 , ¶ 39,
 
 100 P.3d at 1032
 
 [internal citations omitted]. There is no dispute that Appellant was the person leaving the scene of the shooting and the courthouse. We must, therefore, determine whether instruction presumes that the departure demonstrates consciousness of guilt.
 

 ¶46 The instruction given was as follows:
 

 Evidence has been introduced of the defendant's departure and or concealment and or attempted to [sic] escape from custody after the alleged crime was committed. You must first determine whether this action by the defendant constituted flight.
 

 The term "flight," as it is used in this instruction, means more than departure or concealment. To be in flight, a defendant must have departed and or concealed himself and or attempted to escape from custody with a consciousness of guilt in order to avoid arrest.
 

 To find that the defendant was in flight you must find beyond a reasonable doubt that:
 

 First, the defendant departed and or concealed himself and or attempted to escape from custody,
 

 Second, with a consciousness of guilt,
 

 Third, in order to avoid arrest for the crime with which he is charged.
 

 If after a consideration of all the evidence on this issue, you find beyond a reasonable doubt that the defendant was in flight, then this flight is a circumstance which you may consider with all the other evidence in this case in determining the question of the defendant's guilt. However, if you have a reasonable
 doubt that defendant was in flight, then the fact of any departure and or concealment is not a circumstance for you to consider.
 

 OUJI-CR 2d 9-8. Flight instructions should only be given when a defendant interposes a plea of self-defense or justifiable homicide or otherwise explains his departure.
 
 See
 

 Hancock v. State
 
 ,
 
 2007 OK CR 9
 
 , ¶ 104,
 
 155 P.3d 796
 
 , 820,
 
 citing
 

 Mitchell v. State
 
 ,
 
 1993 OK CR 56
 
 , ¶ 7,
 
 876 P.2d 682
 
 , 684
 
 as corrected
 

 1994 OK CR 78
 
 ,
 
 887 P.2d 335
 
 . The conditions were met in this case. In the prior proposition, Appellant claims that he acted in self-defense and his shooting of the victim was justified. Under these circumstances, an instruction on flight is appropriate.
 
 See
 

 Mitchell
 
 ,
 
 1993 OK CR 56
 
 , ¶ 7,
 
 876 P.2d at 684
 
 .
 

 ¶47 This Court has determined that Appellant did not make out a
 
 prima facie
 
 case of self-defense, nor did he explain his departure from the scene of the crime or from the courthouse. He did, however, raise this defense, however flawed it was. It was clear that he left the scene of the crime and traveled to Arkansas, rented a motel room, and stayed there until apprehended by authorities. We find, therefore, the instruction was appropriate.
 

 ¶48 The instruction given narrows a jury's consideration of the facts regarding a defendant's actions after the crime and allows them to determine whether the actions constitute flight. And if the jury so determines that a defendant was in flight, that flight is one circumstance they can consider in determining guilt.
 

 ¶49 The fact that Appellant did not offer a clear or valid explanation for his leaving the scene of the crime and driving to Arkansas, or attempting to flee the courthouse, did not make it inappropriate for the trial court to give the flight instruction. Appellant did claim that he was acting in self-defense because of earlier encounters with the victim. The instruction protected Appellant from the inappropriate assumption that he was presumed guilty for leaving the scene. The instruction, in fact, limits the fact of his leaving to another circumstance that the jury may consider in deciding guilt.
 

 ¶50 The evidence regarding his departure from the scene and his apprehension in Arkansas was clearly relevant to his identity as the perpetrator, as well as his consciousness of guilt. Furthermore, as outlined above, his departure from the courthouse was relevant evidence of a consciousness of guilt that the jury could consider in determining Appellant's guilt or innocence.
 

 ¶51 It seems our case law has strayed far afield from the intent of
 
 Mitchell
 
 where the defendant denied being at the scene of the crime. Here, the instruction did not improperly tell the jury to make an incorrect presumption that Appellant was at the scene, because Appellant admitted that he was at the scene and he killed the victim. In cases where a defendant places himself at the scene of the crime and departs from the scene the instruction may be appropriate. Any language in
 
 Mitchell
 
 , its progeny, and cases cited therein, that require an explanation of departure before the flight instruction is given are hereby overruled.
 
 [1]
 

 ¶52 Appellant, in proposition six, raises a claim of ineffective assistance of trial counsel. We review this claim under
 
 Strickland v. Washington
 
 ,
 
 466 U.S. 668
 
 ,
 
 104 S.Ct. 2052
 
 ,
 
 80 L.Ed.2d 674
 
 (1984), requiring that Appellant show not only that counsel performed deficiently, but that Appellant was prejudiced by it.
 
 Id
 
 .,
 
 466 U.S. at 687
 
 ,
 
 104 S.Ct. 2052
 
 . In this "highly deferential" inquiry, evidence of deficient performance must overcome a strong presumption that counsel's actions constituted sound trial strategy.
 
 Id
 
 .,
 
 466 U.S. at 689
 
 ,
 
 104 S.Ct. 2052
 
 . Prejudice to the defense occurs
 when counsel's deficient performance creates a reasonable probability that the result of the proceeding would have been different. "A reasonable probability is a probability sufficient to undermine confidence in the outcome."
 
 Id
 
 .,
 
 466 U.S. at 694
 
 ,
 
 104 S.Ct. 2052
 
 .
 

 ¶53 Pursuant to Rule 3.11(B),
 
 Rules of the Oklahoma Court of Criminal Appeals
 
 , Title 22, Ch.18, App. (2018), appellate counsel has also submitted an application for evidentiary hearing to supplement the record on appeal. To obtain an evidentiary hearing and supplement the record on appeal with additional evidence of ineffective counsel, Appellant must present clear and convincing evidence that there is a strong possibility trial counsel was ineffective for failing to identify or utilize the available evidence. Rule 3.11(B)(3)(b). This burden is less onerous than
 
 Strickland's
 
 required showing of deficient performance by counsel and resulting prejudice.
 
 Simpson v. State,
 

 2010 OK CR 6
 
 , ¶ 53,
 
 230 P.3d 888
 
 , 905-06. The grant of an evidentiary hearing is
 
 not
 
 a finding that defense counsel actually was ineffective, but a preliminary finding of a strong possibility that warrants a further opportunity to support the claim. Conversely, the
 
 denial
 
 of a request for evidentiary hearing under Rule 3.11(B) necessarily embraces this Court's finding that Appellant has not shown a violation of the Sixth Amendment under
 
 Strickland
 
 .
 

 Id.,
 

 230 P.3d at 906
 
 .
 

 ¶54 Appellant's proposition is divided into several sections. The first section argues that trial counsel failed to utilize available extra-record evidence which forms the foundation of his 3.11 motion. The exhibits attached to Appellant's motion for an evidentiary hearing contain documents which were in the possession of trial counsel.
 

 ¶55 The exhibits contain written statements by Kathy Minor and Gwen Devasier, a crime scene investigation report by OSBI Agent Michael Shufeldt, a report regarding jail recordings by Agent Kent, and two reports from the McCurtain County Sheriff's office regarding the earlier disputes and confrontations between Appellant and the victim.
 

 ¶56 The attachments to the application do not show this Court by clear and convincing evidence there is a strong possibility trial counsel was ineffective for failing to utilize this information. The information does not contradict evidence introduced at trial, nor does the information show that Appellant acted in self-defense. Appellant cannot show that counsel was ineffective for failing to use this evidence during trial; therefore, Appellant's application for evidentiary hearing is denied.
 

 ¶57 Next, Appellant claims counsel was ineffective for failing to utilize evidence which was available in the record in the form of evidence introduced, reports filed with the trial court, and preliminary hearing testimony. Appellant claims counsel was ineffective for failing to question Agent Whit Kent about the jail recordings where Appellant stated that he did not own a gun. These recordings were introduced as evidence to the jury.
 

 ¶58 He also claims counsel was ineffective in failing to question Agent Kent or call witnesses regarding a criminalist report which contains information that Appellant had blood stains on his blue Carhartt shirt found at the Tutt home and on the jeans he was wearing at the time he was arrested. The blood DNA matched Appellant. This later evidence, Appellant argues, would have prevented the State from arguing that Appellant didn't have a drop of blood on him; "does that look like self-defense?" The State used Tutt's testimony regarding the lack of blood on Appellant to support their argument about the lack of blood.
 

 ¶59 Appellant claims that counsel was ineffective for failing to cross-examine Agent Shufeldt about blood stains on the victim's motorcycle seat. Shufeldt testified there were blood stains, but the OSBI lab report states that no blood was detected on the seat swabs. Appellant argues that his self-defense claim would have benefited from the evidence that the victim was not shot as he sat on the motorcycle seat.
 

 ¶60 Appellant claims counsel was ineffective for failing to cross-examine Gwen Devasier and Gayla Alford with their preliminary hearing testimony. Devasier testified at trial
 that she did not see the victim do anything. At the preliminary hearing she testified that the victim who was on his knees was still moving until he received the final shot to the head. Appellant claims this is a key point in his self-defense claim. There is nothing in this testimony which would hint at the possibility that any reasonable person could believe that Appellant was justified in using deadly force in self-defense.
 

 ¶61 Gayla Alford testified during the preliminary hearing that she was not really sure why Appellant left her house just before this homicide occurred. At trial she testified that Appellant received a phone call just before leaving her house in a hurry. Appellant argues that the State used this testimony as part of its evidence of malice aforethought. Based on the testimony, the failure to cross-examine regarding the phone call is clearly a reasonable strategic decision that does not fall outside reasonable bounds of advocacy.
 

 ¶62 Appellant has not presented clear and convincing evidence that there is a strong possibility trial counsel was ineffective for failing to identify or utilize this available evidence. The failure to utilize this evidence does not overcome the presumption that counsel's actions constituted sound trial strategy.
 

 ¶63 Next, Appellant argues that counsel failed to be a zealous advocate by failing to argue persuasively during closing argument. Counsel's argument was based on the evidence presented. His argument constituted a valid strategic decision and Appellant cannot show that he was prejudiced by counsel's closing argument.
 

 ¶64 Lastly, Appellant argues that counsel was ineffective for failing to preserve error in the record, by stipulating to evidence and failing to object to other evidence, and failing to object to improper jury instructions.
 

 ¶65 In the first instance, Appellant claims that counsel was ineffective for stipulating to the introduction of State's Exhibit 21, which is the victim's blood soaked shirt discussed in proposition two. As discussed in proposition two, the introduction of this shirt did not prejudice Appellant in any manner. He cannot, therefore, overcome the prejudice prong of
 
 Strickland's
 
 ineffective assistance test.
 

 ¶66 Next, Appellant claims that counsel was ineffective for failing to object to the introduction of State's Exhibits 9 and 42-55. Exhibit 9 is the timeline prepared by Agent Kent, and discussed in Appellant's substantive argument in proposition two. Counsel stated, "without objection" when the State moved its introduction. This timeline was wholly consistent with the witnesses' testimony and the chronology of the events. Counsel's failure to object did not fall below the wide range of reasonable professional conduct. Moreover, Appellant has not shown that he was prejudiced by counsel's actions. Exhibits 42-55 are the numerous photographs of bullets and bullet fragments which were removed from the victim's body. In proposition two, this Court concluded that Appellant cannot show that he suffered any prejudice from the introduction of these photographs. Here, he cannot overcome the prejudice hurdle of
 
 Strickland
 
 .
 

 ¶67 Appellant claims that counsel was ineffective for failing to object to the testimony of Agent Kent. Appellant does not specifically point to the testimony which trial counsel should have objected to, but in proposition two, Appellant claimed that it was error for Kent to testify by summarizing other witnesses' testimony, utilizing the timeline he had prepared, and to testify regarding his perception of the jail recordings. We found no error in Agent Kent's testimony. Counsel's conduct here did not fall below reasonable professional conduct.
 

 ¶68 Lastly, Appellant claims that counsel was ineffective for failing to ensure that the instructions given by the trial court represented a correct, accurate statement of the law. Substantive claims regarding the jury instructions were raised in propositions three (self-defense instructions) and five (flight instruction). In the propositions we found that, under current law, the giving of the flight instruction was improper; however, an improper inference was not attached to the instruction, so Appellant was not prejudiced. We found that there was no error in the self-defense instructions as the trial court was overly generous in giving those instructions
 at trial. In no manner can Appellant show a reasonable probability, sufficient to undermine the confidence in the outcome, that the result of the proceeding would have been different. Appellant cannot show he was prejudiced by counsel's failure to object to the instructions.
 

 ¶69 This Court has examined each of Appellant's claims of ineffective assistance of counsel and has concluded that counsel was not ineffective under the
 
 Strickland
 
 test. This proposition, therefore, is denied.
 

 DECISION
 

 ¶70 The Judgment and Sentence is
 
 AFFIRMED
 
 . Appellant's Application for Evidentiary Hearing is
 
 DENIED
 
 . Pursuant to Rule 3.15,
 
 Rules of the Oklahoma Court of Criminal Appeals
 
 , Title 22, Ch.18, App. (2018), the
 
 MANDATE
 
 is
 
 ORDERED
 
 issued upon delivery and filing of this decision.
 

 LUMPKIN, P.J.: Specially Concur
 

 HUDSON, J.: Concur
 

 KUEHN, J.: Concur
 

 ROWLAND, J.: Specially Concur
 

 LUMPKIN, PRESIDING JUDGE: SPECIALLY CONCURRING
 

 ¶1 I compliment my colleague on a well written Opinion and agree that
 
 Mitchell v. State
 
 ,
 
 1993 OK CR 56
 
 ,
 
 876 P.2d 682
 
 ,
 
 as corrected
 

 1994 OK CR 78
 
 ,
 
 887 P.2d 335
 
 , and its progeny must be overruled. I write further to emphasize that the jury should be given the uniform instruction upon flight each time the State presents evidence tending to show flight.
 
 Mitchell
 
 ,
 
 1993 OK CR 56
 
 , ¶ 2,
 
 876 P.2d at 686-87
 
 (Lumpkin, P.J., concurring in part/dissenting in part). This instruction channels the jury's decision making process to ensure that this evidence is not given greater weight that it should receive.
 

 Id.
 

 ,
 
 1993 OK CR 56
 
 , ¶ 3, 876 P.2d at 687. Whether a defendant's departure from the scene of the crime constituted flight is a question properly left to the jury.
 
 Id.
 
 ,
 
 1993 OK CR 56
 
 , ¶ 5,
 
 876 P.2d at 687
 
 . Therefore, when any evidence tending to show flight is introduced, the jury is to be instructed on the consideration to be given that evidence.
 

 Id.
 

 ,
 
 1993 OK CR 56
 
 , ¶ 4,
 
 876 P.2d at 687
 
 .
 

 ¶2 I am authorized to state Judge Rowland joins in this writing.
 

 Mitchell v. State,
 

 1993 OK CR 56
 
 ,
 
 876 P.2d 682
 
 ,
 
 as corrected
 

 1994 OK CR 78
 
 ,
 
 887 P.2d 335
 
 ;
 
 see
 

 Ashton v. State
 
 ,
 
 2017 OK CR 15
 
 , ¶ 36,
 
 400 P.3d 887
 
 , 897 (the appellant claimed he panicked and left the scene);
 
 Frederick v. State
 
 ,
 
 2017 OK CR 12
 
 , ¶ 82,
 
 400 P.3d 786
 
 , 813 (holding there was no error in failing to give the instruction because the appellant did not "present evidence explaining his departure.");
 
 Andrew v. State
 
 ,
 
 2007 OK CR 23
 
 , ¶ 115,
 
 164 P.3d 176
 
 , 200,
 
 as corrected
 
 (July 9, 2007),
 
 opinion corrected on denial of reh'g
 
 ,
 
 2007 OK CR 36
 
 , ¶ 115,
 
 168 P.3d 1150
 
 (the appellant explained that she departed to Mexico for a little vacation);
 
 Hancock v. State
 
 ,
 
 2007 OK CR 9
 
 , ¶ 104,
 
 155 P.3d 796
 
 , 820 (instruction approved when appellant claimed self-defense and gave evidence explaining his departure).