2007 OK CR 32

**Jimmy Dean HARRIS, Petitioner**

v.

**STATE of Oklahoma, Respondent.**

No. PCD–2005–665.

Court of Criminal Appeals of Oklahoma.

Aug. 20, 2007.

440

Laura M Arledge, Capital Post–Conviction Division, Oklahoma Indigent Defense System, Norman, OK, Attorney for Petitioner.

W.A. Drew Edmondson, Attorney General of Oklahoma, Preston Saul Draper, Assistant Attorney General, Oklahoma City, OK, Attorney for Respondent.

***OPINION DENYING POST–CONVICTION RELIEF AND DENYING REQUEST FOR EVIDENTIARY HEARING***

CHAPEL, Judge.

¶ 1 Jimmy Dean Harris was tried by jury and convicted of Murder in the First Degree in violation of 21 O.S.1991, § 701.7, in the District Court of Oklahoma County, Case No. CF–1999–5071. On appeal, this Court reversed the punishment of death recommended by the jury and imposed by the trial court, and remanded the case for resentenc-

ing.[1] The jury at Harris's resentencing trial found that Harris knowingly created a great risk of death to more than one person, and constituted a continuing threat to society. In accordance with the jury's recommendation, the Honorable Virgil C. Black imposed the death penalty. This Court affirmed Harris's sentence.[2]

[1] ¶ 2 On April 16, 2007, Harris filed an application for capital post-conviction relief.[3] The only issues appropriately raised under Oklahoma's post-conviction statutes are those which: "(1) [w]ere not or could not have been raised in a direct appeal; and (2) [s]upport a conclusion either that the outcome of the trial would have been different but for the errors or that the defendant is factually innocent." [4] On review, this Court must determine: "(1) whether controverted, previously unresolved factual issues material to the legality of the applicant's confinement exist, (2) whether the applicant's grounds were or could have been previously raised, and (3) whether relief may be granted...." [5] The post-conviction process is not a second appeal. The doctrines of *res judicata* and waiver will apply where a claim either was, or could have been, raised in the petitioner's direct appeal.[6] Harris raises three propositions of error in support of his application.

 ¶ 3 In Harris's first proposition of error he claims that trial and resentencing appellate counsel were all ineffective. In making these claims, he alleges trial counsel was ineffective in several instances and appellate counsel was ineffective for not raising these claims. A claim of ineffective assistance of trial counsel is appropriate for post-conviction review if it has a factual basis that could not have been ascertained through the exercise of reasonable diligence on or before the time of the direct appeal.[7] A claim of ineffective assistance of appellate counsel may be raised for the first time on post-conviction.[8] All post-conviction claims of ineffective assistance are reviewed under United States Supreme Court precedents.[9] Harris must show that counsel's performance was deficient, and that he was so prejudiced by that performance that he was deprived of a fair trial with a reliable result.[10] If we find Harris was not prejudiced by counsel's act or omission, we will not find counsel was ineffective.[11] To find prejudice, we must find Harris has shown "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." [12] There is a strong presumption that counsel's conduct is within the wide range of reasonable professional conduct.[13] Harris must show "that counsel's representation was unreasonable under prevailing professional norms and that the challenged action could not be considered sound trial strategy." [14] We note in this regard that appellate counsel raised a claim of error which required Harris's death sentence to be reversed and remanded for resentencing.

1. *Harris v. State*, 2004 OK CR 1, 84 P.3d 731. Harris was also convicted of Shooting with Intent to Kill and Assault and Battery with a Dangerous Weapon, and sentenced to life and ten years imprisonment. These convictions and sentences were upheld on appeal.

2. *Harris v. State*, 2007 OK CR 28, 164 P.3d 1103.

3. *At this Court's direction, the State filed its Response to Harris's Application on* May 30, 2007. Harris filed a Reply to the State's Response on June 19, 2007, along with a Motion to file, which is hereby granted.

4. 22 O.S.Supp.2004, § 1089(C).

5. 22 O.S.Supp.2004, § 1089(D)(4)(a).

6. *Browning v. State*, 2006 OK CR 37, 144 P.3d 155, 156; *Davis v. State*, 2005 OK CR 21, 123 P.3d 243, 244.

7. 22 O.S.Supp.2004, § 1089(D)(4)(b)(1).

8. 22 O.S.Supp.2004, § 1089(D)(4)(b)(2).

9. 22 O.S.Supp.2004, § 1089(D)(4); *Davis v. State*, 2005 OK CR 21, 123 P.3d 243, 246.

10. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

11. *Browning v. State*, 2006 OK CR 37, 144 P.3d 155, 158; *Davis*, 123 P.3d at 246.

12. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.

13. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.

14. *Davis*, 123 P.3d at 246.

¶ 4 Harris appears to understand that his claims of ineffective assistance of trial counsel from his first trial could all have been raised on direct appeal and are thus barred or waived. He argues that appellate counsel was ineffective for failing to raise various ineffective assistance claims against first trial counsel. However, he offers "examples of ineffective assistance of counsel, either by counsel, appellate counsel, or both." [Application at 17] Insofar as Harris intends to separately raise claims of ineffective assistance of trial counsel at the first trial, those claims are denied.

¶ 5 Harris's appellate counsel claims are divided into several categories. We first address his claims rising from his first trial and first direct appeal. Harris argues appellate counsel failed to raise several meritorious claims. Appellate counsel is not required to raise every non-frivolous issue.[15]

¶ 6 Harris first argues appellate counsel should have claimed that prosecutorial misconduct occurred in the first stage of Harris's trial. A thorough review of the record does not support Harris's claims. He first cites instances where, he claims, the prosecutor denigrated the defense, defense counsel and witnesses, and made improper comments to the jury. Many of the prosecutor's statements or questions were proper; Harris's objections to some improper questions were sustained; and Harris fails to show how he was prejudiced by comments which might have crossed the line. Harris also argues that the prosecutor attempted to incite societal alarm by referring to the missing murder weapon. Specific references to evidence relevant to this case, or Harris's own actions regarding potential evidence, do not constitute societal alarm. Harris suggests that the alleged misconduct in first stage closing argument amounts to structural error. Without engaging in an analysis of structural error, the record does not support his suggestion that this argument contained errors which prejudiced Harris; thus, the argument certainly could not have constituted structural error. Harris has not demon-

strated prejudice from appellate counsel's failure to raise first stage prosecutorial misconduct, and this claim cannot form the basis for a finding of ineffective assistance of appellate counsel.

¶ 7 Harris next argues that appellate counsel failed to claim trial counsel was ineffective. He fails to show that he was prejudiced by appellate counsel's omission. None of these separate claims of ineffective assistance of trial counsel, which were not raised on Harris's direct appeal, form a basis for a finding of ineffective assistance of appellate counsel.

¶ 8 Harris first argues that counsel failed to find or produce microcassette tapes which he alleges were seized by the State in Harris's van. Harris raises the issue of these tapes in his motion for discovery as well. He argues the tapes, allegedly a record of his conversations with his wife Pam concerning what he could take from their home, would show he was acting in accordance with her wishes when he moved certain things from the house. Harris suggests this would have explained why he was so angry when Pam locked up his tools after he moved. Even if this were true, it completely fails to account for the evidence showing Harris took other things which Pam testified were not part of that agreement, and that Harris also defaced the home as he left. In addition, this evidence goes to Harris's relationship with Pam and his reason for being at the AAMCO transmission shop. However, Harris killed a third party, with whom he had no quarrel. Harris fails to show how introduction of the microcassette tapes would have resulted in a different outcome.

¶ 9 Harris argues that appellate counsel should have claimed trial counsel was ineffective because jurors at his first trial saw Harris in restraints as he was escorted to and from the courtroom and after the guilty verdict was pronounced. While Harris likens this to cases in which a person is tried while shackled, the record shows that Harris was not tried while in restraints. He fails to

15. *Walker v. State,* 1997 OK CR 3, 933 P.2d 327, 334, *overruled on other grounds Davis,* 123 P.3d at 246.

show any prejudice from any inadvertent view of him handcuffed before trial.[16]

■ ¶ 10 Harris claims appellate counsel was ineffective for failing to interview Harris's jurors from the first trial. He suggests appellate counsel would have discovered that some jurors saw Harris in handcuffs. Harris completely fails to show how he was prejudiced by this omission; nor does he show that, as a matter of prevailing professional norms, appellate counsel must interview every trial juror.

■ ¶ 11 Harris next claims that appellate counsel was ineffective for failing to raise as error several rulings of the trial court. He first claims the trial court should have instructed jurors that the affirmative defense of heat of passion is a defense to murder in the first degree. This jury instruction was not adopted until 2006, several years after Harris's trial. Beyond claiming that he "is not guilty of malice murder", [Application at 35] Harris fails to show any prejudice from the lack of this instruction. Harris next claims the trial court allowed an improper witness opinion in evidence, when a chiropractor who had treated Harris was allowed to state he did not believe Harris was mentally retarded. The trial court commented, "I think anybody can tell somebody that's mentally retarded." Harris claims this was improper as the chiropractor was an expert in something other than mental retardation, and that the trial court's comment was "a gross misstatement" which showed a lack of understanding of the issue. [Application at 35] However, Harris fails to cite any relevant law on either point. A layperson may offer an opinion as to mental retardation.[17] Harris has not shown he was prejudiced by the trial court's ruling and comment. Harris next claims, without argument, that the trial court erred in allowing jurors to

see Harris in handcuffs. He fails to show any prejudice arising from this claim.

■ ¶ 12 In a separate subproposition, Harris claims that his counsel at his resentencing hearing failed to raise several meritorious issues. Again, insofar as Harris may be raising a claim that resentencing counsel was ineffective, those claims could have been raised on the resentencing appeal and are either barred or waived.

■ ¶ 13 Harris claims that, although resentencing appellate counsel raised several claims of ineffective assistance of trial counsel, including failure to present mitigating evidence, he failed to present all meritorious claims of ineffective assistance of trial counsel. We have previously held that we "will not allow a defendant to subdivide claims in order to relitigate an issue in an application for post-conviction."[18] The claims which were not raised on appeal have been waived.[19] We note that several of Harris's claims of "miscellaneous ineffectiveness" [Application at 37] rely on opinions of Harris's family, and resentencing jurors, regarding resentencing counsel's abilities. Families' and even jurors' opinions of counsel's actions are necessarily seen through the prism of their own involvement with the trial or the defendant. These may not, and in this case do not, offer the Court any substantial assistance when reviewing claims of legal errors.

■ ¶ 14 Harris also claims that resentencing appellate counsel failed to raise the issue of prosecutorial misconduct. Harris's resentencing appellate brief has no separate proposition claiming prosecutorial misconduct, but misconduct issues are raised in Propositions VI. Harris offers other examples of misconduct which he claims resentencing appellate counsel should have raised, emphasizing the prosecutor's use of the victim impact statements in argument. Harris

16. *Mehdipour v. State,* 1998 OK CR 23, 956 P.2d 911, 917 (no error where jurors see defendant briefly while he is handcuffed outside the courtroom).

17. 12 O.S.Supp.2002, § 2701.

18. *Browning,* 144 P.3d at 157.

19. Harris suggests resentencing trial counsel failed to conduct reasonable investigation when he did not allow Harris's daughters to testify as fully as they had in the first trial. This claim is contradictory on its face; resentencing trial counsel was familiar with the record of the first trial, and made a strategic choice not to use all the testimony used in mitigation the first time. This is not a failure to investigate.

has not claimed in this Application or on appeal that the victim impact evidence itself was improper, and the record does not suggest otherwise. He has failed to show with this example or other references that prosecutorial argument deprived him of a fair trial with reliable results, or that an objection to the argument would have resulted in a different outcome.

¶ 15 Harris argues that resentencing appellate counsel was ineffective for failing to investigate jurors at the resentencing hearing. The record reflects that Juror Banister told the trial court that he had never been in court as a witness or party to a case; as Exhibit 7 to the Application Harris provides records showing Banister filed for bankruptcy in 1995. During voir dire, juror Hicks did not indicate she knew Harris. According to an investigator's affidavit, Exhibit 13, Hicks told the investigator she recognized Harris because they went to the same schools, two years apart.[20] Hicks's own affidavit, Exhibit 8, does not repeat this information. Harris claims each juror lied in voir dire, and this automatically taints his panel and requires reversal. He argues that resentencing appellate counsel should have questioned these jurors, discovered these facts, and raised them as a claim of error on appeal. Assuming without deciding that each juror's response amounted to a falsehood, Harris fails to show that this course would have resulted in a different sentencing outcome. Harris relies on an Oklahoma Supreme Court case, *Neumann v. Arrowsmith*,[21] which required a new trial based on juror misrepresentation. However, in that case, the juror's omission in questioning was material and could have affected his ability to hear the civil case. Harris has not demonstrated that either juror's omission here was material or would have affected the outcome of the trial.

¶ 16 Harris claims resentencing appellate counsel was ineffective for failing to raise the issue of the validity of the continuing threat finding. The record reflects that the jury found Harris was a continuing threat to society and that, when polled, each juror affirmed that finding and the sentence of death. Harris relies on juror affidavits to suggest that not all jurors were unanimous regarding the continuing threat aggravating circumstance. A juror may not testify to any matter or statement made during deliberations which influenced his mental processes or verdict, other than extraneous prejudicial information or outside influences.[22] We cannot consider these juror affidavits, and this claim cannot support a finding of ineffective assistance of resentencing appellate counsel.

[23] ¶ 17 Harris argues that resentencing appellate counsel should have raised the issue that resentencing jurors saw him in handcuffs as he was escorted into the courtroom before trial. He fails to demonstrate any prejudice,[23] and this will not support a claim of ineffective assistance of resentencing appellate counsel.

[24] ¶ 18 Finally, Harris argues in Proposition I that resentencing appellate counsel was ineffective for failing to claim that his denial of a jury determination of mental retardation denied him equal protection and due process. Harris's appeal after resentencing contained a claim that resentencing counsel was ineffective for failing to seek a determination that he was mentally retarded. We found that this decision did not support a finding of ineffective assistance because, as nothing in the record suggested Harris is retarded and much suggests he is not, Harris failed to show he was prejudiced by counsel's omission.[24] Harris argues on post-conviction that resentencing appellate counsel should have separately raised the constitutional

---

**20.** The affidavit does not say, as the Application suggests, that Hicks "knew" or "knew of" Harris.

**21.** 2007 OK 10, ¶¶ 11–13, 164 P.3d 116. Harris also relies on *Gann v. State*, 1964 OK CR 122, 397 P.2d 686, 692. This case is also distinguishable. The juror's failure to state that he had been convicted of a felony and served time in prison was a material omission that not only

went to his credibility, but to his eligibility to serve as a juror.

**22.** 12 O.S.2001, § 2606(B); *Matthews v. State*, 2002 OK CR 16, 45 P.3d 907, 914–15.

**23.** *Mehdipour*, 956 P.2d at 917.

**24.** *Harris*, 2007 OK CR 28, ¶ 32.

claims. He argues that he is similarly situated to other defendants who have been granted jury determination of this issue. As in his direct resentencing appeal, Harris again misunderstands the Court's jurisprudence on this issue. He cites cases in which post-conviction defendants already on Death Row, with no other recourse, filed post-conviction claims of mental retardation. These defendants had already been sentenced to death and sought an after-the-fact determination that they were ineligible for that sentence. As this Court does not engage in initial fact-finding, those cases were remanded for jury determination. Harris, by contrast, had not yet received the death penalty or any other sentence. He had the opportunity to raise his claim of mental retardation in the trial court, according to the procedures in effect at that time.[25] Harris is not similarly situated to the capital post-conviction defendants and was not entitled to the procedures used in those cases. Neither his equal protection nor due process rights were denied by the procedures appropriate to his case. Harris was not prejudiced by resentencing appellate counsel's failure to raise this constitutional claim.

▇ ¶ 19 Harris's second proposition of error claims trial and appellate counsel were ineffective for failing to challenge Oklahoma's capital sentencing scheme. In Oklahoma, the local district attorney decides whether to file a murder case as a capital case, and there is no preliminary hearing on the Bill of Particulars which charges aggravating circumstances necessary to support a death penalty. Harris claims that this structural framework is unconstitutional and counsel should have objected. Harris's claim as to trial counsel is waived, as this claim could have been raised on appeal.[26] We have held that no preliminary hearing is necessary on a Bill of Particulars,[27] and Harris cannot show he was prejudiced by appellate counsel's failure to raise this issue. This proposition is denied.

¶ 20 Harris claims in Proposition III that the accumulation of error on appeal and in post-conviction require relief. No authority allows this Court to consider, on post-conviction, errors raised on direct appeal which were not also raised as error in the post-conviction claim.[28] We have determined that trial, resentencing, and appellate counsel were not ineffective. There is no cumulative error to consider.[29]

[26] ¶ 21 In connection with this Post-Conviction Application, Harris has filed a motion for discovery and an evidentiary hearing on his claims of ineffective assistance of counsel. Harris has not shown "by clear and convincing evidence the materials sought to be introduced have or are likely to have support in law and fact to be relevant to an allegation raised in the application for post-conviction relief."[30] He also fails to show why additional discovery is necessary.[31] The motions for discovery and an evidentiary hearing are denied.

¶ 22 Over a month after Harris filed his original Application for Post–Conviction relief, he filed a Motion to Supplement that Application. As the State notes, our Rules specifically prohibit such supplementation.[32] Harris's motion to supplement his application for post-conviction relief is denied.

### Decision

¶ 23 The Application for Capital Post–Conviction Relief, Motion for Evidentiary Hear-

**25.** *Blonner v. State,* 2006 OK CR 1, 127 P.3d 1135, 1139–40; *State ex rel. Lane v. The Hon Jerry D. Bass,* 2004 OK CR 14, 87 P.3d 629, 633; *Murphy v. State,* 2002 OK CR 32, 54 P.3d 556, 567.

**26.** 22 O.S.Supp.2004, § 1089(D)(4)(b)(1).

**27.** *Rojem v. State,* 2006 OK CR 7, 130 P.3d 287, 300; *Davis v. State,* 2004 OK CR 36, 103 P.3d 70, 83.

**28.** *Browning,* 144 P.3d at 158 (Court cannot reach alleged trial errors on post-conviction if errors were not raised in post-conviction claims).

**29.** *Al–Mosawi v. State,* 1998 OK CR 18, 956 P.2d 906, 910.

**30.** 22 O.S.Supp.2004, § 1089(D)(2); Rule 9.7(B)(3), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2007).

**31.** *Browning,* 144 P.3d at 157; *Davis,* 123 P.3d at 249.

**32.** Rule 9.7(B)(3), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2007).

ing, Motion for Discovery, and Motion to Supplement Application are **DENIED.** Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2006), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

C. JOHNSON, V.P.J., A. JOHNSON and LEWIS, JJ.: concur.

LUMPKIN, P.J.: concur in results.