BENCH v. STATE



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:BENCH v. STATE

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 BENCH v. STATE
2021 OK CR 39
Case Number: PCD-2015-698
Decided: 12/22/2021
MILES STERLING BENCH, Petitioner v. THE STATE OF OKLAHOMA, Respondent
Cite as: 2021 OK CR 39, __ __

 

OPINION DENYING APPLICATION FOR POST-CONVICTION RELIEF, MOTION FOR EVIDENTIARY HEARING AND MOTION TO STAY PROCEEDINGS

LUMPKIN, JUDGE:
¶1 Petitioner, Miles Sterling Bench, was tried by jury and convicted of First Degree Murder in the District Court of Stephens County, Case No. CF-2012-172. In a separate sentencing proceeding, the jury found the following aggravating factors: the murder was heinous, atrocious or cruel; and Petitioner poses a continuing threat to society. The jury recommended a sentence of death and the Honorable G. Brent Russell sentenced Petitioner accordingly. This Court affirmed the judgment and sentence in Bench v. State, 2018 OK CR 31, 431 P.3d 929.
¶2 On March 15, 2018, Petitioner filed with this Court an original application for post-conviction relief. He raises the following ten grounds for relief in his application:
I. THE STATE OF OKLAHOMA LACKED JURISDICTION TO PROSECUTE THE CRIME AT ISSUE.
II. THE TRIAL COURT ERRONEOUSLY DENIED MR. BENCH'S CHALLENGES FOR CAUSE LEAVING OBJECTIONABLE JURORS ON THE JURY. THIS ERROR RESULTED IN PETITIONER HAVING TO USE PEREMPTORY CHALLENGES TO EXCUSE JURORS WHO SHOULD HAVE BEEN REMOVED FOR CAUSE AND DENIED PETITIONER HIS FULL COMPLEMENT OF PEREMPTORY CHALLENGES. THIS ERROR DEPRIVED MR. BENCH OF DUE PROCESS OF LAW IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION, AND ARTICLE 2, §§ 7, 19 & 20 OF THE OKLAHOMA CONSTITUTION.
III. GIVING THE JURY INSTRUCTION ON FLIGHT WAS A VIOLATION OF MR. BENCH'S FUNDAMENTAL PRESUMPTION OF INNOCENCE.
IV. THE DEATH PENALTY IS A CRUEL AND UNUSUAL PUNISHMENT FOR MILES BENCH BECAUSE OF HIS AGE AT THE TIME OF THE OFFENSE.
V. PETITIONER RECEIVED INEFFECTIVE ASSISTANCE OF TRIAL AND APPELLATE COUNSEL IN VIOLATION OF THE SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND ARTICLE II, §§ 7, 9, AND 20 OF THE OKLAHOMA CONSTITUTION FOR FAILING TO GET THE MORE SPECIALIZED M.R.I. (MAGNETIC BRAIN EVALUATION) DONE ON MR. BENCH.
VI. THE TRIAL COURT ERRED BY FAILING TO FOLLOW THE STATUTORILY MANDATED PROCEDURES WHEN THE JURY ASKED TWO SEPARATE QUESTIONS DURING THE SECOND STAGE OF THEIR DELIBERATIONS.
VII. UNDER THE TOTALITY OF THE CIRCUMSTANCES, MR. BENCH'S RIGHTS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND CORRESPONDING PROVISIONS OF THE OKLAHOMA CONSTITUTION WERE VIOLATED WHEN THE TRIAL COURT ADMITTED HIS CUSTODIAL STATEMENTS TO DEPUTY SHORT.
VIII. TRIAL COUNSEL WAS INEFFECTIVE IN VIOLATION OF MR. BENCH'S SIXTH, EIGHTH AND FORUTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND ARTICLE II, §§ 7, 9, AND 20 TO THE OKLAHOMA CONSTITUTION.
IX. APPELLANT COUNSEL WAS INEFFECTIVE IN VIOLATION OF MR. BENCH'S EIGHTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND ARTICLE II, §§ 7 AND 9 TO THE OKLAHOMA CONSTITUTION.
X. THE CUMULATIVE IMPACT OF ERRORS IDENTITIFED ON DIRECT APPEAL AND ON POST CONVICTION RENDERED THE PROCEEDINGS RESULTING IN MILES BENCH'S DEATH SENTENCE ARBITRARY, CAPRICIOUS, AND UNRELIABLE.
¶3 The narrow scope of review available under the amended Post-Conviction Procedure Act is well established. See Harris v. State, 2007 OK CR 32, ¶ 2, 167 P.3d 438, 441; Browning v. State, 2006 OK CR 37, ¶ 2, 144 P.3d 155, 156; Murphy v. State, 2005 OK CR 25, ¶ 3, 124 P.3d 1198, 1199. The Post-Conviction Procedure Act was neither designed nor intended to provide applicants another direct appeal. Murphy, 2005 OK CR 25, ¶ 3, 124 P.3d at 1199. The Act has always provided petitioners with very limited grounds upon which to base a collateral attack on their judgments. Id. Accordingly, claims that could have been raised in previous appeals but were not are generally waived; claims raised on direct appeal are res judicata. Id.
¶4 The only issues authorized by the post-conviction statute are those that "[w]ere not and could not have been raised in a direct appeal," and which "support a conclusion either that the outcome of the trial would have been different but for the errors or that the defendant is factually innocent." 22 O.S.2011, § 1089(C). The statute further requires that an application state "specific facts explaining as to each claim why it was not or could not have been raised in a direct appeal and how it supports a conclusion that the outcome of the trial would have been different but for the errors or that the defendant is factually innocent." Id.
¶5 The capital post-conviction statute recognizes that a ground for post-conviction relief "could not have been previously raised if: (1) it is a claim of ineffective assistance of trial counsel involving a factual basis that was not ascertainable through the exercise of reasonable diligence on or before the time of the direct appeal or; (2) it is a claim contained in an original timely application for post-conviction relief relating to ineffective assistance of appellate counsel." 22 O.S.2011, § 1089 (D)(4)(b). The statute also contemplates the adjudication of any post-conviction claim for which the "legal basis" was not "recognized by or could not have been reasonably formulated from a decision of the United States Supreme Court, a federal appellate court or an appellate court of this State, or is a new rule of constitutional law given retroactive effect by the Supreme Court or an appellate court of this State." 22 O.S.2011, § 1089 (D)(9). The post-conviction statute directs this Court to review Petitioner's post-conviction application and determine: (1) whether controverted, previously unresolved factual issues material to the legality of the applicant's confinement exist; (2) whether the applicant's grounds were or could have been previously raised; and (3) whether relief may be granted under this act. 22 O.S.2011, § 1089(D)(4)(a).
I.
¶6 We first address Proposition I of Petitioner's post-conviction application. In this proposition, Petitioner argues the State of Oklahoma lacked jurisdiction to try him for his crime because he is a member of the Choctaw Nation and the murder occurred on the Chickasaw Reservation. He relies upon McGirt v. Oklahoma, __ U.S. __, 140 S. Ct. 2452 (2020), in support of his argument.
¶7 Although this Court initially granted Petitioner relief based upon this proposition after an evidentiary hearing in the district court,
[1] we subsequently decided State ex rel. Matloff v. Wallace, 2021 OK CR 21, 497 P.3d 686, and denied retroactive application of McGirt to cases on collateral review. Thereafter, prior to issuance of the mandate, the order granting post-conviction relief was withdrawn in this case.[2] 
¶8 In Matloff, we began our consideration of the retroactivity issue by finding, "McGirt announced a rule of criminal procedure . . . to recognize a long dormant (or many thought, non-existent) federal jurisdiction over major crimes committed by or against Indians in the Muscogee (Creek) Reservation." Id., 2021 OK CR 21, ¶ 26, 497 P.3d at 691. This rule affected only the method of deciding a criminal defendant's culpability, therefore, it was a procedural ruling. Id., 2021 OK CR 21, ¶ 27, 497 P.3d at 691. We further found that the McGirt rule was new because it broke new ground, imposed new obligations on both the state and the federal governments and the result was not required by precedent existing when the conviction at issue in Matloff was final. Id., 2021 OK CR 21, ¶ 28, 497 P.3d at 692.

¶9 In reaching our decision on the non-retroactivity of McGirt, this Court held that our authority under state law to constrain the collateral impact of McGirt and its progeny "is consistent with both the text of the opinion and the Supreme Court's apparent intent . . . The Supreme Court itself has not declared that McGirt is retroactive to convictions already final when the ruling was announced." Matloff, 2021 OK CR 21, ¶ 33, 497 P.3d at 693. Ultimately, we held in Matloff that "McGirt and our post-McGirt reservation rulings shall not apply retroactively to void a final state conviction . . ." Id., 2021 OK CR 21, ¶ 40, 497 P.3d at 694. Applying Matloff to the instant case, we find Petitioner's claim in this post-conviction proceeding warrants no relief. Proposition I is denied.
II.
¶10 Petitioner raises several substantive claims that could have been raised on direct appeal, specifically those contained in Propositions II, III, IV, VI and VII, set forth above. As these claims could have been raised in the original direct appeal, they are therefore waived. Coddington v. State, 2011 OK CR 21, ¶ 7, 259 P.3d 833, 836; 22 O.S.2011, § 1089(C)(1). Propositions II, III, IV, VI and VII are denied.
III.
¶11 In Propositions V and VIII, Petitioner raises several claims of ineffective assistance of trial counsel. An appellant must raise all available claims of ineffective assistance of trial counsel on direct appeal or the claims are waived. Davis v. State, 2005 OK CR 21, ¶¶ 4-6, 123 P.3d 243, 244. A claim of ineffective assistance of trial counsel is appropriate for post-conviction review only if it has a factual basis that could not have been ascertained through the exercise of reasonable diligence on or before the time of the direct appeal. 22 O.S.2011, § 1089(D)(4)(b)(1).
¶12 Petitioner alleges in Propositions V and VIII that his trial counsel was ineffective for failing to obtain a specific type of MRI scan of his brain. These identical claims were raised on direct appeal and we denied them.
[3] In fact, Petitioner offers the same evidence in support of these propositions as he did on direct appeal. As Petitioner offers no new evidence in support of these claims, we find these claims are res judicata and barred from further review. Logan v. State, 2013 OK CR 2, ¶ 3, 293 P.3d 969, 973. The additional claims in Proposition VIII, alleging trial counsel was ineffective,[4] could have been ascertained through the exercise of reasonable diligence on or before the time of the direct appeal. We find these claims are waived. 22 O.S.2011, § 1089(D)(4)(b)(1); Logan, 2013 OK CR 2, ¶ 3, 293 P.3d at 973. Proposition V with regard to trial counsel and Proposition VIII are denied.
IV.
¶13 Petitioner raises several claims of ineffective assistance of appellate counsel in Propositions V and IX. A claim of ineffective assistance of appellate counsel may be raised for the first time in an initial post-conviction application. 22 O.S.2011, § 1089(D)(4)(b)(2). We conduct our review pursuant to the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). "Under Strickland, 'the petitioner must show both (1) constitutionally deficient performance, by demonstrating that his appellate counsel's conduct was objectively unreasonable, and (2) resulting prejudice, by demonstrating a reasonable probability that, but for counsel's unprofessional error(s), the result of the proceeding -- in this case the appeal -- would have been different.'" Logan, 2013 OK CR 2, ¶ 5, 293 P.3d at 973. When a claim of ineffectiveness of counsel can be disposed of on the ground of lack of prejudice, that course should be followed. Strickland, 466 U.S. at 696. A finding of prejudice requires a showing of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id., 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." Coddington, 2011 OK CR 21, ¶ 3, 259 P.3d at 835 (quoting Harrington v. Richter, 562 U.S. 86, 112 (2011)). There is a strong presumption that counsel's conduct is within the wide range of reasonable professional conduct. Strickland, 466 U.S. at 689. Petitioner must show "that counsel's representation was unreasonable under prevailing professional norms and that the challenged action could not be considered sound trial strategy." Coddington, 2011 OK CR 21, ¶ 3, 259 P.3d at 835. A strong presumption exists that, where counsel focuses on some issues to the exclusion of others, this reflects a strategic decision rather than neglect. Coddington, 2011 OK CR 21, ¶ 3, 259 P.3d at 835-36.
A. Proposition V, allegation that appellant counsel was ineffective for failing to raise the claim on direct appeal that trial counsel was ineffective for failing to obtain a more specific M.R.I of Petitioner's brain.
¶14 As set forth above, appellate counsel raised the claim on direct appeal that trial counsel was ineffective for failing to obtain the more specialized M.R.I. of Petitioner's brain. We denied his claim. Thus, appellant counsel was not ineffective for failing to raise this claim. This portion of Proposition V is denied.
B. Jurisdiction. 
¶15 Petitioner alleges appellate counsel was ineffective for failing to challenge Oklahoma's jurisdiction to try this case. As fully addressed in Section I herein, we determined that McGirt announced a new rule of criminal procedure, not dictated by precedent existing at the time the conviction at issue in Matloff was final. Similarly, the McGirt ruling did not issue until 2020, long after Petitioner's conviction became final in 2018. Thus, any challenge to jurisdiction would have been unsuccessful at the time of Petitioner's trial and appeal. Counsel cannot have been ineffective for failing to raise a baseless claim. Logan, 2013 OK CR 2, ¶ 11, 293 P.3d at 975.
C. Voir Dire. 
¶16 Petitioner argues appellate counsel was ineffective for failing to challenge the trial court's refusal to excuse several jurors for cause. He specifically contends prospective jurors B.C., M.M., J.V. and L.E. should have been excused for cause and because they were not, he was forced to remove B.C., M.M. and J.V. from the panel by way of peremptory challenge.[5] Petitioner requested additional peremptories from the trial court, but his request was denied. He advised the trial court he would have excused jurors L.W. and A.R. if he had received the additional peremptories. We find trial counsel preserved this issue for appeal, but appellate counsel did not raise it. In Nolen v. State, 2021 OK CR 5, ¶ 97, 485 P.3d 829, 853, we held as follows regarding preservation of this issue on appeal:
Nolen preserved the issue as he used his peremptory challenges to strike the three prospective jurors he asked to remove for cause. He also advised the trial court of four other "unacceptable" prospective jurors he would have excused with peremptory challenges had he not been forced to used them on the prospective jurors that the trial court would not excuse for cause.
Review of this issue is for an abuse of discretion. "The decision of whether to disqualify a prospective juror for cause lies within the sound discretion of the trial court." Nolen, 2021 OK CR 5, ¶ 97, 485 P.3d at 853.
¶17 "The purpose of voir dire examination is to ascertain whether there are grounds to challenge prospective jurors for cause and to permit the intelligent use of peremptory challenges." Sanchez v. State, 2009 OK CR 31, ¶ 44, 223 P.3d 980, 997. In a capital case, jurors must be able to consider all the lawful penalties upon conviction, including the death penalty, and not be wedded to any particular penalty prior to the commencement of trial. Id. We acknowledge that doubts about a juror's impartiality are resolved in favor of the defendant, but look to the whole of the prospective juror's voir dire and to the trial court's ruling on the issue, giving deference to that ruling. Nolen, 2021 OK CR 5, ¶ 100, 485 P.3d at 853.
1. Prospective Juror B.C.
¶18 On her juror questionnaire, B.C. did indicate a strong belief in the death penalty. However, B.C. also wrote "there is good in everyone, understand you never know their situation." During the trial court's individual voir dire, B.C. responded that she could weigh the aggravating circumstances against the mitigating circumstances and consider all three punishments upon a finding of guilt and would not automatically impose the death penalty. When questioned by the prosecutor about her death penalty views, B.C. affirmatively responded that she could consider all three punishments upon a finding of guilt. Finally, when defense counsel questioned her on this same topic, B.C. answered that the death penalty might not be appropriate despite a finding of guilt. Although B.C. indicated her desire that criminals should receive the same punishment as what they meted out to their victims, she again affirmed that she could consider all three punishments. She further told defense counsel that she could consider a life sentence and pointed out Petitioner's youth. Over the defense objection, the trial court passed B.C. for cause.
¶19 The entire voir dire of B.C. fails to support Petitioner's contention that B.C. was an unacceptable juror due to her death penalty beliefs. The trial court observed B.C. and found her responses credible and insufficient to remove her for cause. Our review of the entirety of her voir dire, both written and oral, supports the trial court's finding that B.C. could serve as a fair and impartial juror. Thus, the trial court did not abuse its discretion in refusing to remove B.C. for cause.
2. Prospective Juror M.M.
¶20 M.M.'s juror questionnaire showed her strong belief in the death penalty. However, she responded during the trial court's voir dire that she could weigh the aggravating circumstances against the mitigating circumstances and consider all three punishments upon a finding of guilt and would not automatically impose the death penalty. M.M. answered the prosecutor's similar questions in the same manner, indicating she could and would consider all three punishments upon a finding of guilt. When defense counsel questioned M.M., she told him she would consider all the facts presented before making her decision about punishment. Defense counsel then gave her a hypothetical scenario where the jury found Petitioner guilty of first degree murder and the State met its burden to prove the aggravators, but then the jury found out he was glad he committed the murder and would do it again and again. Under those circumstances, defense counsel asked M.M. if she could consider any penalty other than death. Not surprisingly, she responded she could not, based upon the facts as counsel laid them out. Over the defense objection, the trial court passed M.M. for cause.
¶21 Reviewing the record, we find it does not support a finding that M.M. should have been removed for cause. The trial court found that M.M. answered she would give consideration to all three forms of punishment and would wait until the facts and circumstances of the case were presented before making a punishment determination. The trial court further found the defense hypothetical was such that M.M. had every right to determine that the death penalty was appropriate under those circumstances and that her response was not indicative of her inability to consider all three penalties under other circumstances. Our review of the entirety of M.M.'s voir dire, both written and oral, supports the trial court's finding that she could serve as a fair and impartial juror. Consequently, the trial court did not abuse its discretion in refusing to remove M.M. for cause.
3. Prospective Juror J.V.
¶22 J.V. stated on her juror questionnaire that she believed in the death penalty. In her responses during the trial court's voir dire, she indicated she could weigh the aggravating circumstances against the mitigating circumstances and consider all three punishments upon a finding of guilt and would not automatically impose the death penalty. She responded similarly to the prosecutor when he questioned her about her ability to consider all three penalties upon a finding of guilt. Defense counsel asked J.V. about her exposure to publicity and other information about the case. She responded that she saw news stories about the case and had heard people talking about it and how Petitioner should receive the death penalty, if he was guilty. These people included co-workers and relatives. J.V. stated she had not engaged in those conversations because she liked to be open-minded. J.V. stated she did not know and had not heard much about the case itself. She repeatedly stated she could impose a sentence other than death and would listen to all evidence, including mitigating evidence, prior to determining the sentence. Over the defense objection, the trial court passed J.V. for cause.
¶23 Our review of the entire voir dire of J.V. fails to support Petitioner's contention that she was an unacceptable juror due to her exposure to publicity and her death penalty beliefs. The trial court observed J.V. and found her responses showed that she was not persuaded by the talk she heard from others and in fact, had an open mind about the case. The record supports the trial court's finding that J.V. could serve as a fair and impartial juror. Therefore, the trial court did not abuse its discretion in refusing to remove J.V. for cause.
4. Prospective Juror L.E.
¶24 L.E. indicated his opinion of the death penalty was okay on his juror questionnaire. He responded during the trial court's voir dire that he could weigh the aggravating circumstances against the mitigating circumstances and consider all three punishments upon a finding of guilt and would not automatically impose the death penalty. L.E. answered the prosecutor's similar questions in the same manner, indicating he could and would consider all three punishments upon a finding of guilt. Defense counsel posed a hypothetical to L.E., similar to the one he used with M.M., where the jury found Petitioner guilty of first degree murder and the State met its burden to prove the aggravators and L.E. did not believe any of the mitigation evidence presented. In such a case, defense counsel asked, could L.E. actually vote for a life sentence? L.E. responded that there could be a reason to so vote, although he did not know what it would be. Defense counsel asked L.E. again if he could consider a life sentence under the hypothetical circumstances and L.E. responded that he probably could not but there could be some facts and circumstances which would allow him to do so. L.E. ultimately stated that he could consider a life sentence under the circumstances of the hypothetical. Over the defense objection, the trial court passed L.E. for cause.
¶25 Our review of the record does not support a finding that L.E. should have been removed for cause. The trial court found that L.E. answered he would give consideration to all three forms of punishment and would wait until the facts and circumstances of the case were presented before making a punishment determination. The trial court further found the defense hypothetical was "stretching it a little bit" and that L.E. answered the "crucial questions" in a manner such that he "passed for cause." The entirety of L.E.'s voir dire, both written and oral, supports the trial court's finding that he could serve as a fair and impartial juror. Accordingly, the trial court did not abuse its discretion in refusing to remove L.E. for cause.

5. Jurors L.W. and A.R.
¶26 Petitioner claims these two jurors were objectionable and would have been removed from the panel if additional defense peremptories had been allowed. However, he fails to argue why they were objectionable and fails to cite to the record where their individual voir dire occurred. We find this claim is waived. Rule 3.5(A)(5), Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2021) ("An argument . . . supported by citations to the authorities, statutes and parts of the record. . . Failure to list an issue pursuant to these requirements constitutes waiver of alleged error.").
¶27 Having determined the trial court did not abuse its discretion in refusing to remove the prospective jurors at issue for cause, we find appellate counsel was not ineffective for failing to raise this claim on direct appeal. There is no "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.
D. Flight instruction.
¶28 Petitioner maintains that appellate counsel was ineffective for failing to raise a claim on direct appeal that the flight instruction was given erroneously. We disagree, as the trial court properly gave the instruction.
¶29 "In cases where a defendant places himself at the scene of the crime and departs from the scene the instruction may be appropriate. Any language in Mitchell, its progeny, and cases cited therein, that require an explanation of departure before the flight instruction is given are hereby overruled." Williamson v. State, 2018 OK CR 15, ¶ 51, 422 P.3d 752, 762.[6] "The [flight] instruction given narrows a jury's consideration of the facts regarding a defendant's actions after the crime and allows them to determine whether the actions constitute flight. And if the jury so determines that a defendant was in flight, that flight is one circumstance they can consider in determining guilt." Id., 2018 OK CR 15, ¶ 48, 422 P.3d at 762.
¶30 In this case, the evidence presented at trial showed Petitioner's presence at the Teepee Totem at the time of the victim's death. Evidence also showed he left the crime scene in the victim's car, went to his home and packed some essentials, then headed out of the area in her car. He was apprehended by Custer County Deputy Quinton Short pursuant to a BOLO alert for the victim's car. Based upon this record, the trial court correctly gave the flight instruction, which limited the jury's consideration of the evidence. As a result, appellate counsel was not ineffective for failing to raise this claim on direct appeal. Logan, 2013 OK CR 2, ¶ 11, 293 P.3d at 975.
E. Trial court's handling of jury question. 
¶31 Petitioner complains the trial court utilized an improper procedure for addressing a question sent out by the jury during deliberations and appellate counsel was ineffective for failing to raise this claim on direct appeal. There is a statutory procedure codified at 22 O.S.2011, § 894, for a trial court's response to a question sent out by a jury during trial deliberations. Section 894 requires that in such a case, the trial court should bring the jury into the courtroom and instruct them in the presence of, or after notice to, the prosecutor and defense counsel.
¶32 The record reflects that in this case, the trial court consulted with both the prosecutor and defense counsel upon receiving a question from the jury regarding the meaning of life without parole, and responded to the question, without bringing the jury into the courtroom. This plainly violated Section 894. While our older holdings have indicated such a violation results in the presumption of prejudice, we have more recently held that such a presumption is unjustified when the trial court communicates in writing with the jury after giving counsel notice and an opportunity to be heard. Nicholson v. State, 2018 OK CR 10, ¶ 12, 421 P.3d 890, 895. We further held that this technical violation of Section 894 is harmless, where, as here, the attorneys were consulted prior to the court's response and neither party requested the jury's presence in the courtroom. Nicholson, 2018 OK CR 10, ¶ 14, 421 P.3d at 896. We find appellate counsel was not ineffective for failing to raise this claim on direct appeal. Logan, 2013 OK CR 2, ¶ 11, 293 P.3d at 975.
F. Petitioner's statements to Deputy Short. 
¶33 Petitioner contends the trial court erred in admitting his statements to Deputy Short and appellate counsel was ineffective for failing to raise this claim on direct appeal. He argues the statements were made involuntarily. Prior to trial, the court held a hearing on the admissibility of the statements at issue. The trial court denied the motion, finding Petitioner volunteered the subject statements.
¶34 In Miranda v. Arizona, 384 U.S. 436 (1966), the Supreme Court limited the prosecution's use of defendants' statements. The Court held that the prosecution could not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of a defendant unless the suspect had received, prior to police questioning, certain warnings. Id., at 444. "[T]he term 'interrogation' under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 292 (1980). The special procedural safeguards set forth in Miranda are not required where a subject is simply taken into custody, but rather where a suspect in custody is subjected to either express questioning or its functional equivalent. Id., at 300-01.
¶35 "Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." Miranda, 384 U.S. at 478. In Romano v. State, 1995 OK CR 74, ¶ 19, 909 P.2d 92,109, this Court recognized this circumstance stating that "[i]n post-arrest situations where Miranda warnings have not yet been given, a defendant's voluntary statements, not made in response to questioning, are admissible."
¶36 As shown in the record, Deputy Short pulled Petitioner over on I-40 in Custer County after receiving a BOLO alert on the victim's car. After he had Petitioner exit the car, the deputy got his canine out of his patrol car and had the canine "sit" on Petitioner. Contrary to the description of this occurrence contained in the post-conviction application, it is clear from the record that the canine was not physically sitting on Petitioner, but was placed near him to discourage Petitioner from attempting to leave the scene. Thereafter, Deputy Short placed Petitioner in his vehicle to transport him to the Custer County jail. Deputy Short never questioned Petitioner but during the traffic stop, Petitioner said to the deputy, "I think I f--ed up. I think I may have killed somebody."
¶37 Because Petitioner blurted out these statements spontaneously and not in response to any questioning by Deputy Short, their admission at trial was proper. Appellate counsel was not ineffective for failing to raise this claim on direct appeal. Logan, 2013 OK CR 2, ¶ 11, 293 P.3d at 975.
¶38 Having found no ineffective assistance of appellate counsel, Proposition IX is denied.
V.
¶39 Petitioner lastly claims in Proposition X that the accumulation of errors both on direct appeal and in this post-conviction application, warrant a new trial or a re-sentencing hearing. Because we have determined that trial and appellate counsel were not ineffective, there is no cumulative error to consider. Harris, 2007 OK CR 32, ¶ 20, 167 P.3d at 445. Proposition X is denied.
VI.
¶40 Petitioner has filed a separate motion with the Court seeking an evidentiary hearing to develop the factual basis of the claims presented herein. This Court will only grant an evidentiary hearing where the petitioner shows "by clear and convincing evidence the materials sought to be introduced have or are likely to have support in law and fact to be relevant to an allegation raised in the application for post-conviction relief." Rule 9.7(D)(5), Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch.18, App. (2021). Having determined Petitioner's claims raised herein are without merit based upon the existing record, Petitioner fails to show an evidentiary hearing is warranted. This motion is DENIED.
DECISION
¶41 Petitioner's original Application for Post-Conviction relief is DENIED. Petitioner's Motion for Evidentiary Hearing on Post-Conviction claims is DENIED. Petitioner's Motion for Stay of Proceedings is DENIED. Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, CH. 18, App. (2021), the MANDATE is ORDERED issued upon delivery and filing of this decision.
APPEARANCES ON APPEAL
VIRGINIA SANDERS
OIDS CAPITAL POST-CONVICTION DIVISION
BOX 926
NORMAN, OK 73070
COUNSEL FOR PETITIONER
NO RESPONSE FROM THE STATE
OPINION BY: LUMPKIN, J.
ROWLAND, P.J.: Concur
HUDSON, V.P.J.: Specially Concur
LEWIS, J.: Concur
FOOTNOTES
[1] Bench v. State, 2021 OK CR 12, 493 P.3d 19.
[2] Bench v. State, 2021 OK CR 24, 495 P.3d 670.
[3] The portion of Proposition V alleging appellate counsel was ineffective for failing to raise this claim of trial counsel's ineffectiveness on direct appeal is addressed in Section IV of this opinion.
[4] These claims are ineffective assistance of trial counsel for: failing to seek removal of prosecution of this case to federal court; and failing to challenge the trial court's refusal to remove certain jurors for cause.
[5] L.E. was not included in the panel called into the jury box.
[6] As I pointed out in Williamson, I continue to take the position that any time evidence "tending to show flight" is admitted, by either party, "the jury is to be instructed on the consideration to be given that evidence." Williamson, 2018 OK CR 15, ¶ 1, 422 P.3d at 765, Lumpkin, J., specially concurring.




HUDSON, VICE PRESIDING JUDGE, SPECIALLY CONCURRING:
¶1 I fully concur in today's decision denying post-conviction relief. I write separately to address Bench's Proposition VIII claim that trial counsel was ineffective for failing to seek removal of prosecution of his state case to federal court. The Court correctly finds this particular trial counsel ineffectiveness claim is procedurally barred because the factual basis for the claim--Petitioner's Indian status and the location of the murder on historic reservation lands--could have been ascertained through the exercise of reasonable diligence on or before the time of his direct appeal. 22 O.S.2011, § 1089(D)(4)(b)(1).
¶2 Our capital post-conviction rules do not authorize review of ineffective assistance of trial counsel claims where (as here) the underlying claim that trial counsel omitted is based on new legal grounds like McGirt v. Oklahoma, 140 S. Ct. 2452 (2020). Section 1089(D)(4)(b)(1) contemplates simply that the legal basis for an ineffective assistance of trial counsel claim is Strickland v. Washington, 466 U.S. 668 (1984) which, of course, was previously available. The Court correctly distinguishes Bench's freestanding jurisdictional challenge in Proposition I because the legal basis for that claim--McGirt--is a new rule of criminal procedure that was previously unavailable. Review of Petitioner's freestanding McGirt claim is possible precisely for this reason. See 22 O.S.2011 § 1089(D)(9)(a),(b). Of course, that review goes only so far. We do not apply McGirt and our post-McGirt reservation rulings retroactively to void final convictions on post-conviction. State ex rel. Matloff v. Wallace, 2021 OK CR 21, ¶¶ 26-40, 497 P.3d 686, 691-94.
¶3 Our treatment under the post-conviction procedure act of Bench's freestanding McGirt claim, see 22 O.S.2011, § 1089(D)(9), nonetheless stands in sharp contrast to our application of a procedural bar to his accompanying ineffective assistance of trial counsel claim. See id., § 1089(D)(4)(b). This difference is dictated by Section 1089(D) and is wholly consistent when placed in the proper context.
¶4 Our application of Matloff may seem unusual considering that Bench's original application for post-conviction relief was filed before his direct appeal was concluded. Under the post-conviction procedure act, Bench was required to file his application for post-conviction relief during the pendency of his direct appeal. See 22 O.S.2011, § 1089(D)(1). Bench's post-conviction relief application nonetheless remains a collateral challenge to which Matloff applies. We do not review a capital post-conviction relief application unless we first deny relief on direct appeal. The post-conviction procedure act moreover does not authorize a second appeal. Bosse v. State, 2021 OK CR 30, ¶ 4, __P.3d__ (citing Carter v. State, 1997 OK CR 22, ¶ 2, 936 P.2d 342, 343). Post-conviction review is limited to those claims that were not and could not have been raised on direct appeal. 22 O.S.2011, § 1089(C)(1),(2). Our review on post-conviction is severely constrained by statute to determining, inter alia, whether the applicant's grounds were or could have been previously raised. 22 O.S.2011, § 1089(D)(4). There are no similar requirements on direct appeal.
¶5 Because Bench did not raise his Indian country jurisdictional challenge on direct appeal but, instead, in his original application for post-conviction relief, Matloff applies and post-conviction relief for this claim is appropriately denied.




 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Criminal Appeals Cases
 Cite
Name
Level

 1995 OK CR 74, 909 P.2d 92, ROMANO v. STATE
Discussed
 2005 OK CR 21, 123 P.3d 243, DAVIS v. STATE
Discussed
 2005 OK CR 25, 124 P.3d 1198, MURPHY v. STATE
Discussed at Length
 2006 OK CR 37, 144 P.3d 155, BROWNING v. STATE
Discussed
 2007 OK CR 32, 167 P.3d 438, HARRIS v. STATE
Discussed at Length
 2009 OK CR 31, 223 P.3d 980, SANCHEZ v. STATE
Discussed
 2011 OK CR 21, 259 P.3d 833, CODDINGTON v. STATE
Discussed at Length
 2013 OK CR 2, 293 P.3d 969, LOGAN v. STATE
Discussed at Length
 2018 OK CR 10, 421 P.3d 890, NICHOLSON v. STATE
Discussed at Length
 2018 OK CR 15, 422 P.3d 752, WILLIAMSON v. STATE
Discussed at Length
 2018 OK CR 31, 431 P.3d 929, BENCH v. STATE
Discussed
 2021 OK CR 5, 485 P.3d 829, NOLEN v. STATE
Discussed at Length
 2021 OK CR 12, 492 P.3d 19, WITHDRAWN
Cited
 2021 OK CR 21, 497 P.3d 686, STATE ex rel. MATLOFF v. WALLACE
Discussed at Length
 2021 OK CR 24, 495 P.3d 670, BENCH v. STATE
Discussed
 2021 OK CR 30, BOSSE v. STATE
Cited
 1997 OK CR 22, 936 P.2d 342, Carter v State
Discussed
Title 22. Criminal Procedure
 Cite
Name
Level

 22 O.S. 894, Jury Brought Into Court for Information After Retirement-Notice to Parties
Cited
 22 O.S. 1089, Post-Conviction Relief for Death Penalty Conviction - Grounds for Appeal
Discussed at Length


 
 








 
 
 
 

 
 




 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA