OSCN Found Document:BATTEE v. STATE

 

 
 BATTEE v. STATE2026 OK CR 5Case Number: F-2023-930Decided: 02/05/2026Mandate Issued: 02/05/2026THE COURT OF CRIMINAL APPEALS OF THE STATE OF OKLAHOMA
Cite as: 2026 OK CR 5, __ P.3d __

 

TRYMEL KEITH BATTEE, Appellant
v.
THE STATE OF OKLAHOMA, Appellee.

SUMMARY OPINION

MUSSEMAN, VICE PRESIDING JUDGE:

¶1 Appellant, Trymel Keith Battee, appeals his Judgment and Sentence from the District Court of Choctaw County, Case No. CF 2021 67, Count 1, Conjoint Robbery, in violation of 21 O.S.2011, § 800

¶2 The Honorable Jana K. Wallace, Associate District Judge, presided over Appellant's jury trial where the jury found him guilty and assessed punishment at thirty years imprisonment. The trial court sentenced Appellant according to the jury's verdict, suspending all but the first twenty years. 

I. whether Appellant was denied a fair trial because the trial judge failed to disqualify herself or disclose that she was seeking employment with the Oklahoma State Bureau of Investigation (OSBI) during Appellant's trial; and

II. whether the district court committed plain error by admitting the obviously unreliable in court identification based on repeated post crime viewing of pictures witnesses were told were Appellant.

We affirm the Judgment and Sentence of the district court.

I.

¶3 In his first proposition, Appellant claims that facts were brought to light after the conclusion of his trial that the trial judge, then Associate District Judge Jana K. Wallace, was engaged in seeking employment with the OSBI at the time of Appellant's trial. 

¶4 As an initial matter, Judge Wallace did not disclose she was seeking employment as general counsel of the OSBI to the parties, nor was this information readily ascertainable through due diligence until after sentencing in this case when Judge Wallace resigned from the judiciary. Because of this, Appellant did not have the opportunity to object and request Judge Wallace's recusal. See District Court Rule 15, Rules for the District Courts of Oklahoma, Title 12, Ch. 2, App., (2023). "[W]here the trial court made no ruling on disqualification because the potential grounds were not disclosed, our task is to determine whether the effect of these events was to violate the due process rights of the [Appellant]." Fort v. State, 2022 OK CR 12516 P.3d 690

¶5 This Court, like the United States Supreme Court, employs an objective analysis when considering claims of judicial bias under a due process standard. Id. ¶ 12, 516 P.3d at 694. "The Court asks not whether a judge harbors an actual, subjective bias, but instead whether, as an objective matter, 'the average judge in [her] position is likely to be neutral, or whether there is an unconstitutional potential for [actual] bias.' " Williams v. Pennsylvania, 579 U.S. 1, 8 (2016) (emphasis removed) (quoting Caperton v. A.T. Massey Coal Co., Inc., 556 U.S. 868, 881 (2009)). See also Rippo v. Baker, 580 U.S. 285, 287 (2017) ("Recusal is required when, objectively speaking, 'the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.' ") (quoting Withrow v. Larkin, 421 U.S. 35, 47 (1975)). Moreover, a reviewing court should take into account "a realistic appraisal of psychological tendencies and human weakness" while also recognizing "a presumption of honesty and integrity in those serving as adjudicators . . . ." Withrow, 421 U.S. at 47. Finally, a reviewing court must be cognizant that "due process 'demarks only the outer boundaries of judicial disqualifications.' " Williams, 579 U.S. at 13 (quoting Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 828 (1986)). Instead, "[m]ost questions of recusal are addressed by more stringent and detailed ethical rules . . . ." Id.

¶6 Ultimately, the facts in the record are insufficient to demonstrate an unconstitutional potential for actual bias. Judge Wallace seeking and gaining employment as general counsel for the OSBI during the pendency of Appellant's case alone is simply too tenuous to suggest an average judge in Judge Wallace's position would likely be anything other than neutral.

¶7 Appellant's argument that Judge Wallace had a direct pecuniary interest in his case is unavailing. Appellant has not demonstrated that Judge Wallace's future employment with the OSBI as general counsel implicated such an interest in his case. Even assuming the veracity of Appellant's proffered exhibits, they do not give rise to an inference of direct pecuniary interest of a kind the United States Supreme Court has held violates constitutional guarantees of due process through a fair and impartial tribunal. See Tumey v. State of Ohio, 273 U.S. 510 (1927) (holding mayor who received a portion of fines paid to city held a direct pecuniary interest in outcome and could not sit as judge in the case); Ward v. Village of Monroeville, Ohio, 409 U.S. 57 (1972) (holding mayor responsible for village finances could not serve as judge over traffic offense where associated court costs provided a substantial portion of the village funds).

¶8 Appellant relies heavily on the Al-Nashiri case to support his argument of bias. In re Al-Nashiri, 921 F.3d 224 (D.C. Cir. 2019). However, Al-Nashiri is not binding on this Court and is easily distinguishable from Appellant's case. The Al Nashiri case presents a strikingly different factual record, and thus a different conclusion under a due process analysis. The Al-Nashiri case involved a defendant accused of orchestrating al Qaeda's terrorist plots involving failed and completed attempts to bomb vessels in the Gulf of Aiden in the 2000's resulting in multiple charged capital offenses, including murder in violation of the law of war and terrorism. Id. at 226-27. The case was prosecuted under the Military Commissions Act of 2009 which established a military commission to try alien unprivileged enemy combatants. Id. at 227.

¶9 In reviewing the facts of the Al-Nashiri case, the difference in outcome is made apparent by the mounting dissimilarities. While presiding over the Al-Nashiri case, the judge was actively seeking employment as an immigration judge with the U.S. Department of Justice, the same entity prosecuting the defendant. Id. at 226. In the present case, Judge Wallace was not seeking employment with the prosecuting authority, the district attorney's office, but rather as general counsel to an investigative agency.

¶10 In the Al-Nashiri judge's application, he highlighted several times that he was handpicked to preside over the defendant's case and included as a writing sample an order he issued in the Al-Nashiri case. Id. at 227 28. In the present case, there is no evidence, or proffered evidence, that Judge Wallace highlighted her involvement in Appellant's case while seeking employment at the OSBI, nor is there evidence that the OSBI was interested in Judge Wallace's handling of Appellant's case.

¶11 During the extensive back and forth negotiations appointing the judge as an immigration judge, there was a conflict between the same judge and the defense attorneys in the Al-Nashiri case. Id. at 228-30. Ultimately, through a lengthy and contested standoff between the judge and the defense team, the judge was considering writs of attachment for the arrest of several members of the defense team. Id. at 231. While deciding on whether to arrest the defendant's defense team, the judge's employment prospects as an immigration judge finalized and the judge then suddenly changed course, abating proceedings. Id. After finding his frustration with the defense team had been apparent, he held that the case needed action from someone other than him and abated proceedings. Id. In Appellant's case, there is nothing of the sort demonstrating growing conflict between Judge Wallace and Appellant's defense counsel, nor is there a sudden shift in Judge Wallace's handling of Appellant's case.

¶12 Ultimately, Appellant has failed to demonstrate an unconstitutional potential for actual bias in Judge Wallace while she presided over his case. Simply, there are insufficient facts presented to suggest an average judge in Judge Wallace's position would likely be anything other than neutral. Accordingly, Appellant's Proposition I is denied.

II.

¶13 In his second proposition, Appellant claims the trial court committed plain error by admitting the in-court identifications by Donny and Sheri Taylor, owners of the Stoned 4 Survival dispensary, and Andrieka Meeks, the mother of co-defendant Jakavious Meeks. Appellant argues the impermissibly suggestive pre-trial photo identifications violated his right to due process.

¶14 Initially, Appellant does not develop his argument as to why Ms. Meeks's identification should not have been admitted. Appellant's failure to develop this claim by providing argument and legal authority waives it for appellate review under Rule 3.5(A)(5), Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2025). See Bench v. State, 2021 OK CR 39504 P.3d 592Davis v. State, 2018 OK CR 7419 P.3d 271

¶15 Appellant's claim regarding the Taylors' identifications is sufficiently raised for our review on appeal. We review the claim for plain error because the specific objection raised on appeal, that an impermissibly suggestive pre-trial photo identification tainted the in-court identification, was not raised at trial. Gillioms v. State, 2022 OK CR 3504 P.3d 613Washington v. State, 2023 OK CR 22541 P.3d 852Hogan v. State, 2006 OK CR 19139 P.3d 907Id.

¶16 The record shows that neither of the Taylors identified Appellant at preliminary hearing as one of the masked robbers. By the time of trial, the Taylors had learned Appellant's name and identified him at trial as the third masked robber. When asked at trial why she could identify Appellant at trial, but had failed to do so at preliminary hearing, Mrs. Taylor replied that on her own accord, she had "studied" her store's surveillance system for "hours and hours at a time." She testified that upon learning Appellant's name, she had found him on social media, on TikTok, Instagram, and Facebook. Based upon this research, and because she was "up close and personal with him in the store" and she saw his face and his eyes in the store, she identified Appellant as the third robber.

¶17 Mr. Taylor also admitted he did not identify Appellant at the preliminary hearing. However, based on the research his wife had conducted and shared with him, and his experience "living through" the robbery, he identified Appellant at trial as one of the robbers.

¶18 Appellant relies on several U.S. Supreme Court cases for the proposition that when the constitutionality of a photo identification process is challenged, the due process clause requires the court to determine whether the procedure was impermissibly suggestive and if so, whether the identification was nevertheless reliable in view of the totality of the circumstances. See Simmons v. United States, 390 U.S. 377, 384 (1977); Neil v. Biggers, 409 U.S. 188, 199-201 (1972); Foster v. California, 394 U.S. 440 (1969); and United States v. Wade, 388 U.S. 218 (1967). While the cases Appellant relies on address the risks of impermissibly suggestive pre-trial identifications on in-court identifications at trial, each of these cases involves a pre-trial identification procedure arranged and endorsed by state actors. Simmons, 390 U.S. 377 (federal law enforcement); Neil, 409 U.S. 188 (state police department); Foster, 394 U.S. 440 (state police department); and Wade, 388 U.S. 218 (federal law enforcement). The case before us does not involve state sponsored identification procedures, but rather methods of identification the witnesses employed on their own. The facts of this case distinguish it from Appellant's authorities.

¶19 In Perry v. New Hampshire the United States Supreme Court held that "the Due Process Clause does not require a preliminary judicial inquiry into the reliability of an eyewitness identification when the identification was not procured under unnecessarily suggestive circumstances arranged by law enforcement." Perry v. New Hampshire, 565 U.S. 228, 248 (2012). In Perry, officers received a call concerning car break-ins in the parking lot of the caller's apartment building. Id. at 233-34. When the responding officer asked the eyewitness to describe the man she saw breaking into the cars, she looked out the window and said the man was standing in the parking lot next to a police officer. Id. at 234. That man was subsequently arrested, charged, and convicted of theft by unauthorized taking. Id.

¶20 In upholding this conviction, the Supreme Court rejected the appellant's challenge to his identification as being unnecessarily suggestive. The Court explained in part that previous decisions turned on "the presence of state action and aim to deter police from rigging identification procedures, for example, at a lineup, showup, or photograph array." Perry, 565 U.S. at 233. Instead, when there is no improper state activity involved, it is sufficient to test reliability of witness identifications "through the rights and opportunities generally designed for that purpose, notably, the presence of counsel at post indictment lineups, vigorous cross-examination, protective rules of evidence, and jury instructions on both the fallibility of eyewitness identification and the requirement that guilt be proved beyond a reasonable doubt." Id.

¶21 Based upon this reasoning, we find that in the absence of state action in the identification process, constitutional due process rights are not implicated. An allegedly suggestive pre-trial identification alleged to violate a defendant's constitutional due process rights must be the result of either police or prosecution action to have an effect on the admissibility of a subsequent in-court identification.

¶22 In the present case, the Taylors' in-court identifications were based on their own personal research into the persons who robbed their dispensary. Their conduct was not initiated or sponsored by state actors. In the absence of any state action in the pre-trial identification process, there is no due process violation.

¶23 Accordingly, we find no due process violation in the admission of the Taylors' identification of Appellant. As the Supreme Court noted,

such evidence is for the jury to weigh. We are content to rely upon the good sense and judgment of American juries, for evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature.

Manson v Brathwaite, 432 U.S. 98, 116 (1977). Finding no error in the admission of the challenged identifications, we no find plain error. Proposition II is denied.

DECISION

¶24 Appellant's Motion for New Trial and Request for Evidentiary Hearing is DENIED. The Judgment and Sentence of the district court is AFFIRMED. Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2026), the MANDATE is ORDERED issued upon delivery and filing of this decision.

AN APPEAL FROM THE DISTRICT COURT OF CHOCTAW COUNTY,
THE HONORABLE JANA K. WALLACE,
ASSOCIATE DISTRICT JUDGE

 
 
 APPEARANCES AT TRIAL
 
 TRAVIS S. CROCKER
 OKLAHOMA INDIGENT DEFENSE SYSTEM
 113 N. CENTRAL AVE.
 IDABEL, OK 74745
 COUNSEL FOR THE DEFENSE
 
 
 
 
 MARK A. MATLOFF
 DISTRICT ATTORNEY
 TOM SAWYER
 ASST. DISTRICT ATTORNEY
 300 E. DUKE ST.
 HUGO, OK 74743
 COUNSEL FOR THE STATE
 
 
 
 OPINION BY: MUSSEMAN, V.P.J.
 LUMPKIN, P.J.: Concur in Results
 LEWIS, J.: Concur
 HUDSON, J.: Concur
 ROWLAND, J.: Concur
 APPEARANCES ON APPEAL
 
 TAYLOR L. LEDFORD
 OKLAHOMA INDIGENT DEFENSE SYSTEM
 111 N. PETERS AVE., STE. 100
 NORMAN, OK 73069
 COUNSEL FOR APPELLANT
 
 
 
 
 GENTNER F. DRUMMOND
 ATTORNEY GENERAL OF OKLAHOMA
 RANDALL YOUNG
 ASST. ATTORNEY GENERAL
 313 N.E. 21ST ST.
 OKLAHOMA CITY, OK 73105
 COUNSEL FOR THE STATE
 
 

FOOTNOTES

21 O.S.Supp.2015, § 13.1

Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2025). See Fort v. State, 2022 OK CR 12516 P.3d 690Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2025).

 

 

LUMPKIN, PRESIDING JUDGE: CONCUR IN RESULTS

¶1 I concur in affirming the Judgment and Sentence in this case but write separately to address the standard of review used in Proposition I. Our review on appeal is for plain error as no request for recusal or objection to Judge Wallace presiding over Appellant's trial was raised in the court below. Gillioms v. State, 2022 OK CR 3, ¶ 18, 504 P.3d 613Simpson v. State, 1994 OK CR 40876 P.2d 690Fort v. State, 2022 OK CR 12516 P.3d 690 

¶2 Additionally, Appellant fails to show any evidence within the record on appeal that the trial proceedings were not fair or that any rulings by the court resulted in a showing of prejudice or bias against him. For these reasons, I concur in the judgment of this Court.